RICHARD ET AL., APPELLEES, *v.*
STAEHLE, D.B.A. SNEDDEN & COMPANY, APPELLANT.

(No. 9639—Decided September 3, 1980.)

*Buckingham, Doolittle & Burroughs Co., L.P.A., Mr. Frederick M. Lombardi* and *Mr. John N. Childs,* for appellees.
*Mr. Paul A. Borowski,* for appellant.

BELL, P. J.   In 1979, the appellees brought a malpractice action against the appellant, who is their former accountant and a licensed attorney. They received a judgment in the Court of Common Pleas of Summit County for $14,888 which the appellant now challenges. For the reasons set forth below, we affirm.

The appellees, Henry S. Richard, Jr., and his wife Judith, went into the gasoline service station business in 1970. At that time, they retained a public accountant, James Snedden, d.b.a. Snedden & Company, to handle their financial affairs and business records. The Richards desired to pay their employees primarily through commissions, since they felt that this would provide a greater incentive than a straight salary. Accordingly, Mr. Snedden set up such a system for them.

Mr. Richard worked in the station as a mechanic and supervised the other employees, while Mrs. Richard was in charge of bookkeeping and other paper work. Once a week a Snedden & Company employee would come to the station and

pick up the payroll records, invoices, *etc.*, and take them back to the Snedden office. There, Mr. Snedden or his employees would compute the amount of pay due each of the Richards' employees, deduct the proper taxes, write checks to pay these and other obligations, and, in general, take care of all of the financial aspects of the Richards' business.

The appellees first met the appellant, Richard Staehle, sometime in 1974, when he was introduced to them as an attorney who had become associated with Snedden & Company. In fact, Mr. Snedden had retired and Mr. Staehle had bought the Snedden & Company business, although the Richards did not learn of this until later. During that year (1974), Mr. Staehle arranged for the incorporation of the Richards' business as Hank Richard Exxon, Inc., and also set up a pension plan for them (there was a cause of action involving the pension plan in the trial court which resulted in a judgment for the appellant, but that is not before us on this appeal).

Sometime toward the end of 1975, the appellees became aware that other service station operators in the area were being investigated by the Wage and Hour Division of the United States Department of Labor for minimum wage violations. Concerned, lest they should have the same problems, Mr. Richard approached the appellant on the matter, stating that he wanted to "be legal" on the minimum wage. The Richards still desired to pay their employees on a commission basis, if possible.

Mr. Staehle then recommended some changes in the payroll system to the Richards, which they adopted. Hourly employees were formerly paid a salary plus commission, but this was changed to a "guarantee" plus commission. Actual hours worked by each employee were now recorded, whereas previously they had not been.

On December 12 and 16 of 1975, appellant sent letters to the Richards and other clients, giving examples of how to comply with the overtime requirements of the Fair Labor Standards Act, Section 201 *et seq.*, Title 29, U. S. Code (FLSA, commonly known as the minimum wage law). One portion of those letters said, in effect, that commissions paid to employees can be used to offset any deficiencies in overtime pay under the FLSA. Shortly thereafter, Mrs. Richard had occasion to discuss this matter personally with appellant, who

reiterated that commissions could be used to make up overtime deficiencies. The payroll was computed accordingly.

In the following years, the Richards' business prospered, so that by the end of 1977, they were operating three service stations. However, in December of that year, they learned that they were being investigated by the Wage and Hour Division of the United States Department of Labor, for pay violations at all three stations.

The Wage and Hour Division audit uncovered a large deficiency for the years of 1976 and 1977 in the pay of the Richards' employees who were receiving a guarantee plus commission. This shortage consisted mostly of unpaid overtime, with a small amount representing minimum wage violations.

It was at this time that the appellees first learned of Section 7(i) of the FLSA, Section 207(i), Title 29, U. S. Code. This section exempts employers who pay commissions from the normal overtime pay requirements of the Act, if their employees receive a base salary exceeding one and one-half times the minimum wage rate for all hours worked. Had the Richards complied with this section, they would have avoided the deficiency.

The audit and subsequent negotiations continued through early April of 1978. The preliminary calculations of the Wage and Hour Division investigators showed a deficiency of $17,238.85. This was later reduced to $16,820.45, and an administrative settlement for that amount was reached in April of 1978. Under the terms of the agreement, no fines or penalties were assessed; the appellees simply had to pay their employees the back wages. A plan was arranged whereby the Richards were permitted to make installment payments for a year rather than having to pay in one lump sum. Even so, there was evidence that they were forced to close one of their stations to meet this obligation.

The appellees terminated the appellant's services at two of their stations shortly after the settlement was reached but continued to use him at the third station for a few more months until it was closed in August of 1978. Their business relationship ended at that time.

The instant action in malpractice was brought in March of 1979 to recover, as damages, the amount of the deficiency

which they had to pay. Plaintiffs prayed for $14,888.88, instead of the full amount of the assessment, because some former employees had moved and could not be located; and, thus, some money had not actually been paid out. The trial court found that the appellant had been negligent in his advice to the Richards on how to properly pay overtime wages, and also in not advising them as to the provisions of Section 7(i) of the FLSA. Accordingly, the court rendered judgment for the Richards in the amount of $14,888 and costs, and Mr. Staehle now appeals.

*Assignment of Error No. 1*

"The trial court erred in granting judgment on plaintiffs' first cause of action which was barred by the statute of limitations resulting in a verdict which is contrary to law."

It is hornbook law that the statute of limitations begins to run when the cause of action accrues. However, when this maxim is applied to actual facts it is often difficult to determine exactly when that point in time might be. The problem is complicated further by the fact that the appellant is both an accountant and an attorney and was acting in a dual capacity, since he was offering an interpretation of the minimum wage law.

In the present case, there are four events which might be considered to mark the time when the cause of action accrued:

(1) The time the advice was given (December 1975);

(2) The time when the Richards first learned that they would be liable for a deficiency (January 1978);

(3) The time when the administrative settlement was reached (April 1978); or,

(4) The time when the professional relationship between the parties ended (August 1978).

The statute of limitations for malpractice, R. C. 2305.11(A), is one year. This statute applies to attorneys. *Richardson* v. *Doe* (1964), 176 Ohio St. 370. The Ohio Supreme Court has rejected the "discovery rule," which would allow a cause of action for malpractice to accrue at the time the injury is discovered, in favor of the "termination rule." Accordingly, the court has held that "[a] cause of action for malpractice against an attorney accrues, at the latest, when the attorney-client relationship finally terminates." *Keaton Co.* v. *Kolby* (1971), 27 Ohio St. 2d 234, syllabus. Although the phrase "at

the latest" seems to imply that the cause of action might accrue earlier, the Supreme Court has apparently rejected that argument. In *Ishler* v. *Miller* (1978), 56 Ohio St. 2d 447, 450, it was held that that phrase means only that the cause of action cannot accrue any later than the termination of the professional relationship.

Since the relationship between the parties here ended in August of 1978 and since the case at bar was brought in March of 1979, we hold that this action was timely commenced against the appellant in his capacity as an attorney.

Appellant is also an accountant and argues that "malpractice" by professionals such as accountants is governed by the one-year statute of limitations in R. C. 2305.11(A). However, our Supreme Court has interpreted that statute very restrictively, refusing to extend it beyond the common law professions of law and medicine, or professions specifically named therein. Therefore, actions against accountants are not within the ambit of R. C. 2305.11(A). *Hocking Conservancy District* v. *Dodson-Lindblom Associates* (1980), 62 Ohio St. 2d 195.

Instead, such actions are governed by the general tort statute of limitations, R. C. 2305.09, which contains a limit of four years. A cause of action for negligence accrues when the negligent act is committed. *Kerns* v. *Schoonmaker* (1831), 4 Ohio 331; *Minster Loan & Savings Co.* v. *Laufersweiler* (1940), 67 Ohio App. 375.

Thus, the cause of action under R. C. 2305.09 accrued at the time the allegedly negligent advice was given, *i.e.*, in December of 1975; hence, we hold that this action was timely commenced against the appellant in his capacity as an accountant.

Assignment of Error No. 1 is overruled.

*Assignment of Error No. 2*

"The trial court failed to consider that the fair labor standards act, as amended imposed a strict liability on the plaintiffs barring them from being indemnified by the defendant resulting in a verdict which is contrary to law."

Appellant is correct in stating that appellees have no right of indemnity from him for the amounts which they had to pay their employees. However, this is not an action for indemnity, but for malpractice, *i.e.*, negligence. Damages for negligence

in regard to property are measured by the pecuniary loss resulting proximately from the injury. 16 Ohio Jurisprudence 2d Rev., Damages, Section 64. Appellees did not obtain a judgment in an amount equal to the deficiency which they had to pay because appellant was required to indemnify them; they obtained a judgment in that amount because that was the amount of the pecuniary loss they suffered as a result of appellant's negligence.

Assignment of Error No. 2 is overruled.

### Assignment of Error No. 3

"The trial court erred in imposing the strict duty of an insurer and guarantor on the defendant rather than the applicable standard of care resulting in a verdict which is contrary to law."

The trial court, in its judgment order, defined the standard of care as follows:

"An accountant has no obligation to advise a client on legal matters such as offering an interpretation of the Fair Labor Standards Act. However, if he does so, he has a duty to offer correct advice which does not cause a client to suffer damages."

While we think this formulation, as stated, may be somewhat limited, we hold that the trial court did, on the basis of the testimony received herein, apply the proper standard.

A standard of conduct as to what constitutes due care may be established by legislative enactment or judicial decision. In the absence of either, it is established by a consideration of the facts and circumstances of the particular case. *Eisenhuth* v. *Moneyhon* (1954), 161 Ohio St. 367.

Since there is no specifically defined standard of care for accountants in Ohio, we are remitted to the third alternative above; and, we, thus, believe that the general principles of the Restatement of the Law of Torts 2d, Section 299A, at page 73, apply:

"Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities."

This standard has been applied to professionals in general, *General Trading Corp.* v. *Burnup & Sims, Inc.* (C.A. 3, 1975),

523 F. 2d 98; *Kastler* v. *Iowa Methodist Hospital* (Iowa 1971), 193 N.W. 2d 98; and accountants in particular, *Gammel* v. *Ernst & Ernst* (1955), 245 Minn. 249, 72 N.W. 2d 364; *Delmar Vineyard* v. *Timmons* (Tenn. App. 1972), 486 S.W. 2d 914.

Thus, appellant is correct in arguing that a professional person is not a guarantor of infallibility, but only of reasonable competence judged by the standards of that profession in similar localities. *Frank M. Dorsey & Sons, Inc.,* v. *Frishman* (D.C. D.C. 1968), 291 F. Supp. 794; *Powder Horn Nursery, Inc.,* v. *Soil & Plant Laboratory, Inc.* (1978), 119 Ariz. 78, 579 P. 2d 582; Restatement of the Law of Torts 2d, Section 299A, Comments *e* and *g*.

Four witnesses testified at trial as to the standards of care for accountants and labor lawyers in this area. The consensus was that the professional giving advice in this area should thoroughly research the applicable statutes and regulations; that any advice given should be correct; and that the professional should follow up with the client to make sure that the advice given was understood and being followed. The trial judge, sitting as the finder of fact, concluded that the appellant breached this standard; and, from the evidence in the record, we cannot say that this finding was erroneous.

Assignment of Error No. 3 is overruled.

### Assignment of Error No. 4

"The trial court erred in its interpretation and application of the law on damages to the facts adduced at trial resulting in a verdict which is contrary to law."

When the standard of conduct has been breached, the standard of liability is that set forth in Restatement of the Law of Torts 2d, Section 552, at pp. 126-127:

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

This section has been applied to accountants. See *Rhode Island Hospital Trust National Bank* v. *Swartz, Bresenoff, Yavner & Jacobs* (C.A. 4, 1972), 455 F. 2d 847. Note that this section does not make the professional an insurer, but imposes

liability only in case of negligence. It may also be noted that attorneys are likewise liable for damages proximately caused by their negligence. 7A Corpus Juris Secundum, Attorney & Client, Section 273.

The appellant analogizes this case to those wherein it is held that an attorney who prepares an incorrect tax return, resulting in a deficiency being assessed against his client, is not liable to the client for the amount of the deficiency, since it represents taxes which the client was obligated to pay in any event. Appellant's argument is that the deficiency assessed by the Wage and Hour Division was for overtime which the appellees should have paid in the first place. However, the trial court properly found that this was not the case.

Under the FLSA, the proper way to compute an hourly employee's rate of pay is to divide his total remuneration for the work week by the total number of hours worked during the week. Section 778.109, 29 C.F.R. (1979). Commissions must be included in the regular rate. *Id.*, at Section 778.118. Commissions cannot be used to cover overtime liability, because the Act requires payment of one and one-half times the employee's *actual* rate, which includes commissions for overtime work—not one and one-half times the *minimum wage rate.* Thus, the fact that an employee's total pay exceeds the minimum wage rate for overtime makes no difference, if the employee's actual hourly rate is higher than the minimum wage. *Warren-Bradshaw Drilling Co.* v. *Hall* (1942), 317 U. S. 88; *Brennan* v. *Lauderdale Yacht Basin, Inc.* (C.A. 5, 1974), 493 F. 2d 188.

This was the predicament in which the Richards found themselves. The effect of setting up their payroll in the manner that appellant advised was that the Richards were paying their employees a much higher hourly rate than they realized. Since their employees worked a large amount of overtime, a sizable overtime deficiency resulted.

The appellees have since changed their payroll to conform to the requirements of the exemption contained in Section 7(i) of the FLSA, *i.e.,* they pay their employees an hourly rate equal to one cent more than one and one-half times the minimum wage for all hours worked, with commissions on top of that. At the trial, there was unrefuted testimony from Mrs. Richard that, under the current system, each employee is being paid practically the same total amount as before, with no overtime deficiencies being incurred.

Thus, while it is true that no fines or penalties were assessed against the appellees, it is not true that the deficiency represented wages that they would have had to pay in any event, as appellant contends. Assignment of Error No. 4 is, therefore, overruled.

To conclude, Assignments of Error Nos. 1, 2, 3 and 4 are overruled and the judgment is affirmed.

*Judgment affirmed.*

MAHONEY and HUNSICKER, JJ., concur.

HUNSICKER, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.