**SHAW, Appellant and Cross–Appellee,**

v.

**TYRRELL, Appellee and Cross–Appellant.**

[Cite as *Shaw v. Tyrrell* (1994), 96 Ohio App.3d 117.]

Court of Appeals of Ohio,
Clark County.

No. 3104.

Decided July 13, 1994.

*Bonnie A. Conrad,* for appellant and cross-appellee.

*John P. Hilgeman,* for appellee and cross-appellant.

WOLFF, Judge.

David Shaw appeals from a judgment of the Clark County Court of Common Pleas which found that Jack Tyrrell did not negligently perform his bookkeeping duties and which ordered Shaw to pay the balance due for Tyrrell's services.

Tyrrell filed a cross-appeal from the trial court's judgment denying his motion for sanctions against Shaw and Shaw's attorney.

Shaw failed to order a transcript for inclusion in the record. See App.R. 9(B). However, because both parties' briefs refer to the transcript and in the interest of deciding this appeal and cross-appeal on the merits, we directed that the transcript be submitted directly to this court to complete the record. Shaw's counsel provided this court only with pages 1, 14–74, and 244–263 of the transcript. Upon our request, Tyrrell's counsel provided pages 75–243, and 264–291 of the transcript. Despite our repeated requests, Shaw's counsel has failed to provide pages 2–13 of the transcript. Only those portions of the transcript received by this court are considered part of the record for our consideration. The clerk of this court will file these portions of the transcript upon our presentation of them to him.

The background facts and procedural history are as follows.

David Shaw and Harlan Wyloge were officers of Our Stuff, Inc., an Ohio corporation. Our Stuff's sole place of business was Springfield, Ohio, and Shaw conducted the day-to-day operations of the corporation. In order to ensure his continued involvement in the operations of the corporation, Wyloge, who lived in California, hired Jack Tyrrell, a California bookkeeper, to prepare Our Stuff's monthly income statements, balance sheets, and payroll tax forms.

Tyrrell performed bookkeeping services for Our Stuff from the time of its incorporation in April 1989 through the second quarter of 1991. When Tyrrell was hired, Wyloge agreed that Our Stuff would provide Tyrrell with all of the forms that he would need to fulfill his duties because Tyrrell was not familiar with Ohio's payroll tax requirements. Our Stuff did not provide Tyrrell with an Ohio Bureau of Employment Services Employer's Contribution Report form to fill out regarding Ohio's unemployment payroll withholding tax. Our Stuff did not pay this withholding tax until some time in 1991.

Tyrrell did fill out the Employer's Annual Federal Unemployment Tax Return (hereinafter referred to as the "FUTA form") for both the 1989 and 1990 tax years. A blank copy of the 1989 form, which is identical to the 1990 form, is attached to this opinion as Appendix A. The first three questions on this form ask whether the employer paid all required contributions to state unemployment funds, whether the employer is only required to pay contributions in one state, and whether any part of the payroll is exempt from state unemployment tax. The FUTA form also requests the employer's "state reporting number(s) as shown on state unemployment tax return."

Tyrrell testified that when he filled out the FUTA form for Our Stuff he did not request any additional information from the corporation regarding required

contributions to an Ohio unemployment fund. Tyrrell stated that he assumed that Ohio did not have unemployment withholding or that the unemployment contribution was included in the other Ohio withholding taxes. On the 1989 and 1990 FUTA forms, he inconsistently answered the question regarding whether all required state contributions had been made, *i.e.*, for 1989, he reported that the contributions had not been paid, and for 1990, he reported that the contributions had been paid. Unemployment contributions had not been paid to Ohio for either year. Where the form requested the state reporting number, Tyrrell listed Our Stuff's federal identification number, under the assumption that the numbers would be the same. Ohio has a separate number for reporting state unemployment tax.

In 1991, Our Stuff discharged an employee who then applied for unemployment benefits. At that time, the Ohio Bureau of Employment Services (hereinafter "OBES") discovered that Our Stuff had not contributed to the State Unemployment Fund. After this deficiency was discovered, Our Stuff hired Veronica Gibson, an Ohio bookkeeper, to review the corporate books prepared by Tyrrell and to assume the duties that had been performed by Tyrrell through the second quarter of 1991.

Our Stuff incurred penalties and interest charges for its failure to pay the Ohio unemployment withholding tax in a timely manner. The corporation was also assessed federal tax penalties and interest charges. As a result of Our Stuff's financial difficulties, the corporation was dissolved. Shaw is its successor in interest.

Shaw filed a complaint against Tyrrell and Tyrrell's sole proprietorship, Tyrrell's Bookkeeping and Tax Service. The first count alleged that Tyrrell negligently prepared the payroll without making provisions for the proper state and federal withholding taxes. Shaw alleged that Tyrrell's negligence proximately caused Our Stuff to incur "interest and penalties owed to government agencies." The second count of the complaint alleged that Tyrrell breached his contract with Our Stuff by failing to provide for the proper state and federal withholding taxes and that Our Stuff suffered liabilities in excess of $12,873 as a result of this breach. The amount of damages on the first count was not specified in the complaint, but a week before trial Shaw filed an amended complaint alleging damages on the first count of $15,000.

Tyrrell filed a counterclaim, alleging that Shaw owed $1,625 for the services he had performed. The amount of Tyrrell's claim was amended to $1,750 on the day of trial.

A two-day bench trial was held. After the close of the evidence, Tyrrell, through his attorney, moved the court for sanctions against Shaw and his attorney. The court instructed Tyrrell to submit that motion in writing along

with the parties' closing arguments, which the parties had agreed to file in writing. After the closing arguments and the motion for sanctions had been filed, the trial court found that Shaw "failed to establish by a preponderance of the evidence presented any significant negligence of defendant relating to plaintiff's subsequent tax liabilities, penalties or assessments," and it rendered judgment in favor of Tyrrell on the complaint. The court also found that the amounts charged by Tyrrell were reasonable and necessary, and the court rendered judgment in favor of Tyrrell on his counterclaim. Finally, the court overruled Tyrrell's motion for sanctions.

We will first consider Shaw's two assignments of error and then consider Tyrrell's cross-appeal.

"I. The trial court erred in finding appellee was not negligent."

In this assignment of error, Shaw offers two arguments. First, he argues that the trial court failed to hold Tyrrell to the proper standard of care, *i.e.*, the standard of care for bookkeepers. Second, he argues that the trial court erred in not accepting Tyrrell's admissions of negligence.

■ At oral argument, Shaw's counsel clarified his first argument, which is not clear in his brief. Shaw is essentially arguing that, once the trial court found that Tyrrell was not a certified public accountant, the court failed to hold him to any standard of care. Shaw contends that the court should have applied the general standard of care for professionals defined in the Restatement of the Law 2d, Torts (1965) 73, Section 299A, as adopted by the Ohio Supreme Court for accountants. Section 299A reads, in part, as follows:

"Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." *Richard v. Staehle* (1980), 70 Ohio App.2d 93, 98, 24 O.O.3d 121, 124, 434 N.E.2d 1379, 1384.

Shaw puts forth a conclusory argument that the court must have applied the wrong standard because "[i]f the trial court had applied the [correct] standard, Appellee Jack Tyrrell would have been found negligent." The testimony at trial referred only to the standard of care of bookkeepers. The trial court did not state which, if any, standard of care it applied to Tyrrell's performance of his duties. In the absence of evidence in the record that the trial court applied the wrong standard of care or failed to apply any standard of care, we will indulge in the presumption that the trial court acted as it ought to have acted and applied the proper standard of care.

In his second argument supporting this assignment of error, Shaw contends that the trial court erred by not accepting Tyrrell's admissions as proof of his negligence. Shaw's counsel questioned Tyrrell about the care he used in answering the question on the FUTA forms regarding whether state unemployment contributions had been paid as follows:

"Q. Looking at question A on the 1989 federal unemployment tax return. * * * On question A there's some information in parentheses right after the question.

"A. Okay. See instructions if none required?

"Q. Yes.

"A. Okay.

"Q. You stated that you didn't know whether or not to, how to answer that box, is that correct?

"A. Uh-huh.

"Q. In fact, you whited it out. You had yes, you had no, and you weren't sure which?

"A. Uh-huh.

"Q. Did you read the instructions which [say] what was required?

"A. Yes. I assumed that no was the answer after looking at the instructions.

"Q. But in 1990 you assumed the same exact same question?

"A. Uh-huh.

"Q. Exact same see instructions if none required?

"A. *This is, like I say, that was an error; that was a habit.*

"Q. So you're filling out these forms out of habit and not—

"A. In California when you fill a lot of them out, they (state contributions) are required.

" * * *

"Q. Your testimony is as you sit here today you filled out this 1990 federal, employer's annual federal unemployment tax return out of habit instead of out of a careful consideration of the documents of the questions you were being asked?

"A. It's possible to fall into.

"Q. Yes or no?

"A. Yes or no.

"Q. Sir, is it your testimony as you stand here—

"A. To a certain extent, yes, all forms are filled out of habit.

"Q. Okay. Let me ask more specifically, sir.

"A. Or routine would be better.

" * * *

"Q. Sir, isn't it true as you just testified that you filled out the 1990 employer annual federal unemployment tax return as a matter of habit and not from a careful consideration of the questions and information in front of you?

"A. *The yes or no questions, yes; they would be a matter of routine, yes.*" (Emphasis added).

Tyrrell went on to testify that the answers to these "yes or no questions" at the beginning of the FUTA form did not have any tax consequences. However, that testimony was contradicted not only by Shaw's expert, but also by the FUTA form itself.

The FUTA form on its face demonstrates that the answers to these questions have tax consequences. See Appendix A. Whether a taxpayer is to fill out Part II or Parts III and V depends upon his answers to the first three questions regarding state contributions.

On the 1989 FUTA form, Tyrrell correctly responded to question A that contributions to the state fund had not been paid, but he failed to follow the directions on the form which dictated that, because he answered "no" to question A, he should have completed Parts III and V, rather than Part II. On the 1990 FUTA form, Tyrrell incorrectly responded that the required contributions to the state fund had been paid, and he then completed Part II of the form.

At the time that Tyrrell completed the FUTA forms, Our Stuff had not supplied him with any information regarding state unemployment contributions. If he had properly responded to question A on the FUTA forms and then properly proceeded to Parts III and V, he would not have had the necessary information to complete the form correctly. Tyrrell testified, and Shaw's expert agreed, that if he did not have the information necessary to complete a form, the standard of care for bookkeepers would require him to ask his client for the necessary information.

In completing the improper sections of the FUTA forms, Tyrrell applied a lower tax rate to compute Our Stuff's federal unemployment tax liability than he should have applied, *i.e.*, Tyrrell applied a tax rate of 0.8 percent, rather than the proper tax rate of 6.2 percent. Accordingly, Tyrrell's improper completion of the FUTA forms had tax consequences for Our Stuff.

Tyrrell had a duty to correctly complete the forms provided to him by Our Stuff. The 1989 FUTA form, on its face, demonstrates that Tyrrell breached his

duty to properly complete that form. Tyrrell admitted, and other evidence demonstrated, that he erred in responding to question A on the 1990 FUTA form. As a result of his improper completion of the FUTA forms, Tyrrell underestimated Our Stuff's tax liability. Shaw presented evidence that Our Stuff incurred penalties and interest charges in excess of the market rate as a result of underpaying its federal unemployment withholding tax. Accordingly, Shaw demonstrated all of the elements of a claim of negligence against Tyrrell: (1) that Tyrrell owed Our Stuff a duty, (2) that Tyrrell breached that duty, and (3) that Tyrrell's breach of that duty proximately caused a monetary injury to Our Stuff.

As to Tyrrell's actions in completing the 1989 and 1990 FUTA forms, the trial court's finding that Shaw had not proved by preponderance of the evidence "any significant negligence" by Tyrrell was against the weight of the evidence. Shaw has demonstrated, as a matter of law, that Tyrrell breached his duty to Our Stuff in filling out the FUTA forms.

However, Tyrrell is only liable for the damages proximately caused by his negligent preparation of the FUTA forms. Shaw has also claimed that Tyrrell negligently failed to alert Our Stuff that it may have been liable for state unemployment contributions. Shaw argued that Tyrrell had a duty to request the information regarding state unemployment which he needed to properly complete the FUTA forms. Shaw contends that, if Tyrrell would have requested that information, Our Stuff would have discovered its obligation, and it would have avoided the OBES penalties and interest which it incurred. Tyrrell's testimony reveals that he did not request the information because he did not realize that he needed any further information. Further, evidence was submitted that it was Our Stuff's duty to discover what its obligations were and to forward the applicable forms to Tyrrell. Testimony also revealed that it would have been as simple for Our Stuff to discover that it was obligated to make state unemployment contributions as it would have been for Tyrrell to discover that obligation. Tyrrell repeatedly testified, and Wyloge agreed, that he was not hired to investigate Ohio law or Our Stuff's Ohio tax obligations. Accordingly, the trial court reasonably found that Shaw failed to prove that Tyrrell breached any duty that caused Our Stuff to incur OBES penalties and interest charges in excess of the market rate.

Due to the trial court's error in not recognizing Tyrrell's negligent completion of the 1989 and 1990 FUTA forms and resultant damage to Our Stuff, the first assignment of error is sustained.

"II. The trial court erred in finding appellant liable for appellee's account."

In this assignment of error, Shaw argues that the trial court erred in awarding Tyrrell judgment on his counterclaim for the balance due for his services

rendered to Our Stuff. Shaw asserts several arguments that he should not be liable as the successor in interest of Our Stuff for the full amount of Tyrrell's bill.

Initially, Shaw contends that $460 of the $1,750 awarded to Tyrrell on his counterclaim was for services performed by Tyrrell's father and that Tyrrell failed to present any evidence that he was entitled to collect claims on behalf of his father. However, the testimony at trial clearly demonstrated that $210 of the amount due to Tyrrell's father had already been paid by Our Stuff, and that Tyrrell had not included that amount in his claim. The testimony further showed that Tyrrell had amended his claim to deduct $250 which was still owing to his father. Tyrrell explained that he did not realize that he was not able to collect that amount when he filed his counterclaim and that that $250 was subtracted from the amount of the claim when he recognized the error. Accordingly, the testimony established that the amount of Tyrrell's claim at the end of the trial did not include any amount due to his father.

Shaw also alleges that Tyrrell added $125 to his claim on the day of trial, denying Shaw "any opportunity to examine the claim or prepare any defenses to it." In the transcript provided to this court, which does not include pages 2–13 that Shaw's counsel failed to provide, the only reference to Tyrrell's amendment of his claim is in Tyrrell's testimony. He states that a mathematical error had been discovered that morning and that the claim was amended to correct that error. Shaw did not object to this testimony. By failing to timely object to the amendment at trial or to request a continuance, Shaw implied his consent to the amendment of Tyrrell's claim to conform with the evidence. See Civ.R. 15(B). Shaw cannot now claim as error that which he consented to at trial.

Next, Shaw argues that his obligation to pay for Tyrrell's services should have been discharged because of Tyrrell's negligence and because Shaw had to pay another bookkeeper to correct Tyrrell's mistakes. Shaw presented evidence that he paid Gibson $500 to review Our Stuff's books and to prepare corporate returns. However, on cross-examination, Gibson was unable to give any indication as to how much of her fee reflected her work in reviewing Tyrrell's services as contrasted with her work in preparing the corporate returns for which Tyrrell was not responsible. Accordingly, any deduction in the amount Shaw owed Tyrrell as a result of Gibson's fees would have been speculative, and the trial court did not err in failing to reduce Tyrrell's claim by the amount of those fees.

However, Shaw was entitled to a reduction on his balance due to Tyrrell for the services which Tyrrell performed negligently. Tyrrell's negligence in completing the 1989 and 1990 FUTA forms was established as a matter of law. Accordingly, Shaw should not have been ordered to pay Tyrrell for completing those forms, and the trial court should have deducted any fees charged by Tyrrell

for completing the FUTA forms from the amount of his claim. See 17A American Jurisprudence 2d (1991) 636–37, Contracts, Section 627.

Shaw did not demonstrate a complete defense to his liability to pay for the services performed by Tyrrell. Therefore, we do not agree with Shaw that the trial court erred in granting Tyrrell judgment on his counterclaim. Rather, the trial court erred only in failing to deduct the fees charged for those services which were negligently performed.

Thus, the second assignment of error is sustained in part and overruled in part.

The judgment of the trial court will be reversed, and the matter will be remanded for a determination of the proper damages on both Shaw's and Tyrrell's claims and for other proceedings consistent with this opinion.

We will now address Tyrrell's cross-appeal. Due to the similarity of the issues presented, his two assignments of error will be considered together.

"I. The trial court's denial of appellee's/cross-appellant's motion for sanctions, reasonable attorney fees and expenses pursuant to Ohio Civil Rule 11 and Ohio Revised Code Section 2323.51 is against the manifest weight of the evidence and contrary to law.

"II. The trial court erred in not conducting a hearing on appellee's/cross-appellant's motion for sanctions, reasonable attorney fees, and expenses pursuant to Ohio Civil Rule 11 and Ohio Revised Code Section 2323.51."

Tyrrell claims that the trial court should have imposed sanctions on Shaw and his attorney for engaging in frivolous conduct. Specifically, Tyrrell argues that "[t]he damages claimed by Shaw were fabricated. The amount * * * [of] damages claimed by Shaw was not warranted under existing law, and could not be supported by any good faith argument for an extension, modification, or reversal of existing law." Tyrrell admits that Shaw had a "colorable action" against him for $1,100.64.

The thrust of Tyrrell's argument is that Shaw grossly overestimated the amount of his damages and, therefore, the trial court should have imposed sanctions against Shaw and his attorney. This court does not condone intentional overestimation of damages by plaintiffs. However, plaintiffs cannot receive more in damages than they pray for in their demands for judgment. See Civ.R. 54(B). Accordingly, plaintiffs and plaintiffs' counsel must be allowed some leeway to err on the high side when determining the amount of damages to demand. If sanctions were appropriate whenever the amount of damages demanded exceeded the amount of damages awarded, plaintiffs would have no margin for error when alleging damages. Sanctions are generally not appropriate where, as here, a

party's only basis for sanctions is the other party's overestimation of damages on an otherwise valid claim.

Thus, the trial court did not err in denying Tyrrell's motion for sanctions, nor did it err in failing to conduct a hearing on the motion. Tyrrell's two cross-assignments of error are overruled.

The trial court's judgment on the complaint and the counterclaim will be reversed, and the matter will be remanded for further proceedings consistent with our disposition of Shaw's first and second assignments of error. The portion of the trial court's judgment denying Tyrrell's motion for sanctions will be affirmed.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

BROGAN and FAIN, JJ., concur.

## APPENDIX A

**Form 940**
Department of the Treasury
Internal Revenue Service

### Employer's Annual Federal Unemployment (FUTA) Tax Return
▶ For Paperwork Reduction Act Notice, see page 2.

OMB No. 1545-0028

**1989**

| | |
|---|---|
| T | |
| FF | |
| FD | |
| FP | |
| I | |
| T | |

If incorrect, make any necessary change. ▶

Name (as distinguished from trade name)    Calendar year

Trade name, if any

Address and ZIP code    Employer identification number

**A** Did you pay all required contributions to state unemployment funds by the due date of Form 940? (See instructions if none required.) . . . ☐ Yes ☐ No
If you checked the "Yes" box, enter the amount of contributions paid to state unemployment funds. . . . . . . . ▶ $ ............

**B** Are you required to pay contributions to only one state? . . . . . . . . . . . . . ☐ Yes ☐ No
If you checked the "Yes" box: (1) Enter the name of the state where you are required to pay contributions . . . . . . ▶ ..............
(2) Enter your state reporting number(s) as shown on state unemployment tax return. ▶ ..............

**C** If any part of wages taxable for FUTA tax is exempt from state unemployment tax, check the box. (See the Specific Instructions on page 2.). . . . . ☐
Note: If you checked the "Yes" boxes in both questions A and B and did not check the box in C above, you may be able to use Form 940-EZ.

**Part I    Computation of Taxable Wages (to be completed by all taxpayers)**

| | | | |
|---|---|---|---|
| 1 | Total payments (including exempt payments) during the calendar year for services of employees . . . . . | 1 | |
| 2 | Exempt payments (Explain each exemption shown, attaching additional sheets if necessary.) ▶ ............ **Amount paid** | 2 | |
| 3 | Payments for services of more than $7,000. Enter only the excess over the first $7,000 paid to individual employees not including exempt amounts shown on line 2. Do not use the state wage limitation. . . . | 3 | |
| 4 | Total exempt payments (add lines 2 and 3) . . . . | 4 | |
| 5 | Total taxable wages (subtract line 4 from line 1) (If any part is exempt from state contributions, see instructions.) ▶ | 5 | |

**Part II    Tax Due or Refund (Complete if you checked the "Yes" boxes in both questions A and B and did not check the box in C above.)**

| | | | |
|---|---|---|---|
| 1 | Total FUTA tax. Multiply the wages in Part I, line 5, by .008 and enter here. . . . . . . . | 1 | |
| 2 | Total FUTA tax deposited for the year, including any overpayment applied from a prior year (from your records) | 2 | |
| 3 | Balance due (subtract line 2 from line 1). This should be $100 or less. Pay to IRS . . . . . ▶ | 3 | |
| 4 | Overpayment (subtract line 1 from line 2) Check if it is to be: ☐ Applied to next return, or ☐ Refunded ▶ | 4 | |

**Part III    Tax Due or Refund (Complete if you checked the "No" box in either question A or B or you checked the box in C above. Also complete Part V.)**

| | | | |
|---|---|---|---|
| 1 | Gross FUTA tax. Multiply the wages in Part I, line 5, by .062 . . | 1 | |
| 2 | Maximum credit. Multiply the wages in Part I, line 5, by .054 . . . | 2 | |
| 3 | Credit allowable: Enter the smaller of the amount in Part V, line 11, or Part III, line 2 . . | 3 | |
| 4 | Total FUTA tax (subtract line 3 from line 1). . . . . | 4 | |
| 5 | Total FUTA tax deposited for the year, including any overpayment applied from a prior year (from your records) | 5 | |
| 6 | Balance due (subtract line 5 from line 4). This should be $100 or less. Pay to IRS . . . . ▶ | 6 | |
| 7 | Overpayment (subtract line 4 from line 5) Check if it is to be: ☐ Applied to next return, or ☐ Refunded . ▶ | 7 | |

**Part IV    Record of Quarterly Federal Tax Liability for Unemployment Tax (Do not include state liability.)**

| Quarter | First | Second | Third | Fourth | Total for Year |
|---|---|---|---|---|---|
| Liability for quarter | | | | | |

**Part V    Computation of Tentative Credit (Complete if you checked the "No" box in either question A or B or you checked the box in C above—see instructions.)**

| Name of state 1 | State reporting number(s) as shown on employer's state contribution returns 2 | Taxable payroll (as defined in state act) 3 | State experience rate period 4 From— To— | State experience rate 5 | Contributions if rate had been 5.4% (col. 3 x .054) 6 | Contributions payable at experience rate (col. 3 x col. 5) 7 | Additional credit (col. 6 minus col. 7) if 0 or less, enter 0 8 | Contributions actually paid to the state 9 |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**10** Totals . . . . ▶

**11** Total tentative credit (add line 10, columns 8 and 9 only—see instructions for limitations) . . . . . ▶

If you will not have to file returns in the future, write "Final" here (see general instruction "Who Must File") and sign the return. ▶

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that no part of any payment made to a state unemployment fund is claimed as a credit was or is to be deducted from the payments to employees.

Signature ▶        Title (Owner, etc.) ▶        Date ▶

Form 940 (1989)