**ESTATE OF Mervin M. JAYCOX, etc., Plaintiffs,**

v.

**SETTY FAMILY VETERANS RESIDENTIAL CARE HOME, et al., Defendants.**

No. C–2–00–386.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 27, 2002.

Steven J. Edwards, Grove City, OH, for Plaintiffs.

George Alpheus Lyons, Columbus, OH, Jan Martin Holtzman, Department of Justice, Cinncinnati, OH, for Defendants.

## OPINION AND ORDER

KEMP, United States Magistrate Judge.

This action arises under the laws of the State of Ohio and the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* On March 29, 2000, plaintiff, Estate of Mervin M. Jaycox (the "Estate"), filed suit against Setty Family Veterans Residential Care Home ("Setty RCH") and the United States of America Department of Veterans Affairs (the "VA") asserting that it is entitled to recover based on Setty RCH's and the VA's negligence, which it claims was the cause of Mr. Jaycox's death. The case has been referred to the undersigned for final disposition pursuant to 28 U.S.C. § 636(c). On June 26, 2002, the Estate filed an amended motion to amend its complaint to add as additional defendants Lester Howard and Kathy Howard, owners of the real estate upon which Setty RCH is located. On July 31, 2002, Setty RCH and the VA moved for summary judgment. That motion has been fully briefed. For the following reasons, the Court will grant defendants' motion for summary judgment and will deny the motion for leave to amend.

## I.

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in FED. R. CIV. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142(1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See *Celotex Corp. v. Catrett,* 477

U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II.

The following statement of facts is taken from the complaint, motions for summary judgment, and the memoranda filed in connection with the motions for summary judgment. The Court notes that it could not consider all of the evidence cited by the parties because none of the deposition transcripts to which they refer were filed with the Court. *See* FED. R. CIV. P. 56(c); S.D. OHIO CIV. R. 5.4. The Court will, however, consider the deposition excerpts attached to the various memoranda because no party has objected to them. Based on that evidence, the facts can be stated as follows.

Mr. Jaycox was a veteran of the United States armed forces. The VA assists in placement of veterans into privately owned homes that offer assisted living services. *See* 38 U.S.C. § 1730. After Mr. Jaycox's wife and care-giver was admitted to a nursing home in London, Ohio following a stroke, Mr. Jaycox sought the VA's assistance in finding a suitable place to live. Mr. Jaycox contacted Charles Hodges, a social worker with the VA. Mr. Hodges put Mr. Jaycox in contact with Robert Brandyberry, a social worker with the VA Community Residential Care Program, who was responsible for assisting veterans in finding a suitable residential care home ("RCH").

In assessing Mr. Jaycox's suitability for placement in an RCH, Mr. Brandyberry learned that Mr. Jaycox, who was then 69 years old, had a history of stroke, seizure disorder, long and short term memory impairment, visual impairments, and mobility issues. See Exh. 8 to Plaintiff's Memorandum Contra (file doc # 41). Mr. Jaycox's preference was for placement close to his wife's nursing home. Mr. Brandyberry knew that Mr. Jaycox would need assistance with his mobility. Exh. B, p. 2. Although both Mr. Brandyberry and Mr. Jaycox would have preferred that Mr. Jaycox live in a first floor room, none was available in the RCHs which were close to London, Ohio. On May 24, 1996, Mr. Jaycox took up residence in a second floor room in Setty RCH, in Mt. Sterling, Ohio. In addition to being on the second floor, this room also had direct access to a balcony/fire escape. Although there is some dispute as to who made the final decision as to where Mr. Jaycox would live, it is undisputed that Mr. Jaycox's residence in Setty RCH was voluntary and that he was competent to make major life decisions for himself.

Mr. Brandyberry was aware that Mr. Jaycox's room was on the second floor and had access to a balcony/fire escape. In his deposition, Mr. Brandyberry stated that Mr. Jaycox's placement in Setty RCH was conditional on Mr. Jaycox's ability to negotiate the stairs, which Mr. Jaycox told Mr. Brandyberry he was able to do. Further, the Setty RCH house rules prohibit residents from going out on the balcony/fire escape unless there is a fire or fire drill.

On June 17, 1996, less than a month after he took up residence at Setty RCH, Mr. Jaycox was admitted to the VA Medical Center in Chillicothe, Ohio. He expressed dissatisfaction with his living arrangements, apparently due to the difference in care he received there compared to how his wife had cared for him prior to her stroke. While at the Medical Center, Mr. Jaycox had a psychiatric consultation and was placed on Haldol, an antipsychotic medication, apparently to treat an adjustment disorder and a personality disorder, both of which were noted in his discharge diagnosis. He was discharged on June 27, 1996 on vari-

ous medications. At that time, he was "considered competent for VA purposes." Exh. F to Plaintiff's Memorandum Contra. His medical history stated that he had walked away from Setty RCH due to unhappiness over his living situation and that "[h]e becomes agitated when discussing his living situation." *Id.* Nonetheless, he returned to Setty RCH following his discharge from the Medical Center.

During his hospitalization, Mr. Jaycox underwent a screening procedure by a social worker, Glen Schmidt. The history recorded on that screening form, which is Exh. G to Plaintiff's Memorandum Contra, is essentially the same as taken by Mr. Brandyberry, except that Mr. Schmidt was told by Mr. Jaycox's son that Mr. Jaycox had experienced "recent episodes of disorientation and confusion plus aggressive behavior." He was determined to be " 'at risk' per VA criteria." The record does not reflect exactly what is meant by that phrase. Mr. Schmidt also noted that Mr. Jaycox would return to Setty RCH but "questioned" his acceptance of that placement.

On July 12, 1996, Mr. Brandyberry visited Mr. Jaycox in Mr. Jaycox's room to discuss some of Mr. Jaycox's complaints. During this meeting, Mr. Jaycox became angry as he explained his dissatisfaction with his living conditions and with the care he was receiving at Setty RCH. He informed Mr. Brandyberry that he planned to leave Setty RCH. At the end of their conversation, Mr. Jaycox walked out onto the balcony/fire escape. Satisfied that Mr. Jaycox had calmed down considerably, Mr. Brandyberry left Mr. Jaycox alone and went downstairs to make a telephone call. While Mr. Brandyberry was on the telephone, he heard a loud thump. Upon investigation of the noise, Mr. Jaycox was found on the ground beneath the balcony/fire escape. When he fell, he struck his head on a cistern cover. Upon arrival at the hospital, Mr. Jaycox was pronounced dead. The Estate contends that the negligence of Mr. Brandyberry and Setty RCH were contributing causes to Mr. Jaycox's death.

## III.

The Estate's suit against the VA arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.* Under the FTCA, the VA is liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Its claims against the Setty defendants arise directly under Ohio law. Therefore, this Court will apply the negligence law of the State of Ohio to both claims.

In Ohio, the elements of negligence are (1) the existence of a duty to the injured party, (2) a breach of that duty, (3) proximate causation, and (4) damages. *See Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). Although many relationships carry with them specific duties implied by that relationship, in general "[t]he common-law duty of care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances." *Id.* No Ohio case appears specifically to recognize a special duty of care owed either by social workers to clients who seek assistance in finding appropriate residential care, or by the operators of group homes to their residents. The Court will assume, without deciding, that the latter relationship does impose

certain duties which necessarily vary with the extent to which the residents of a group home are able to care for themselves. *Cf. Niece v. Elmview Group Home,* 131 Wash.2d 39, 46, 929 P.2d 420 (1997) (group home "had a duty to take reasonable precautions to protect [a resident] from the foreseeable consequences of her impairments"). The degree of care implicit in the former relationship will be explored more fully below.

The Estate claims, first, that both the VA and Setty were negligent in permitting Mr. Jaycox to live in a second-floor room that had access to a balcony and fire escape. In support of that claim, they point to the evidence that Mr. Jaycox had some balance and memory problems, both of which were known to the defendants, and to the affidavit of Lori Lozier, a social worker with experience in the nursing home setting. Ms. Lozier states in her affidavit, which is Exh. H to Plaintiff's Memorandum Contra, that both defendants violated whatever duty of care they owed to Mr. Jaycox by placing him in a second-story room with a balcony because "[g]iven [his] medical history … and the resulting physical and mental limitations, it [was] foreseeable that Mervin Jaycox would be injured from being placed in a second floor room with a balcony." ·

After considering these arguments, the Court concludes, as a matter of law, that neither Setty RCH nor the VA was negligent when it allowed Mr. Jaycox to take up residence in a second floor room with direct access to the balcony/fire escape. First, there is no dispute that Mr. Jaycox was competent to make major life decisions. Although Ms. Lozier concludes that the VA never made a complete social work assessment of Mr. Jaycox and was also negligent for not having done so, there is nothing in the record from which this Court may conclude that a complete social work assessment would have revealed to

either the VA or Setty RCH that Mr. Jaycox was not competent to select the home he wished to live in, to decide to return to Setty RCH after his June 1996 hospitalization, or to refuse placement in a second-floor room. Thus, the precise question presented is whether either defendant breached a duty by not prohibiting Mr. Jaycox, a competent adult, from choosing to live in a second-floor room at Setty RCH.

■ The Court begins its analysis of this question by noting that, under Ohio law, there is no duty to warn of an open and obvious danger. In *Prest v. Delta Delta Delta Sorority,* 115 Ohio App.3d 712, 686 N.E.2d 293 (Franklin Co.1996), the court explained that the duty of ordinary care does not impose a duty to warn of or protect from dangers that are so open and obvious that a person should be expected to discover them and protect himself against them. *See id.* at 715, 686 N.E.2d 293. In *Prest,* an intoxicated young man climbed to the roof of a sorority house and fell asleep there. While sleeping, he rolled off the roof and died as a result of the fall. The court held that the danger of being on a roof was an "open and obvious" danger and as such, the owner/occupier of the land had no duty to warn of the danger. *Id.* Further, the court explained that the young man's voluntary intoxication did not relieve him of the reasonable person standard of awareness of the danger of being on a roof. *See id.* at 716, 686 N.E.2d 293.

■ In the case at bar, the balcony/fire escape was an open and obvious danger. *See Summers v. Fort Crockett Hotel, Ltd.,* 902 S.W.2d 20, 28 (Tex.App.1995)(explaining that the fact a person can fall from an eighth story balcony is an open and obvious danger of which a person is deemed to know). When Mr. Jaycox moved into Setty RCH he was told that the house rules prohibited residents from going out onto

the balcony/fire escape unless there was a fire or fire drill. Even if Mr. Jaycox had not had direct access to the balcony/fire escape from his room, it is conceivable that he still might have accomplished the same objective even if it had required him to walk through another's room. The Court notes that because of Mr. Jaycox's memory difficulties, he may not have remembered that he was prohibited from going out onto the balcony. However, following the reasoning from *Prest* and *Summers,* the Court concludes that Mr. Jaycox was still competent to appreciate the inherent danger of standing on a second floor balcony even if he had forgotten that he was prohibited by Setty's rules from going out onto the balcony. Consequently, neither Setty RCH nor the VA owed Mr. Jaycox a duty to warn him of, or protect him from, this particular danger.

 The Estate argues, however, that it was foreseeable that a person with Mr. Jaycox's particular physical and mental issues would injure himself if placed in a second-story room with a balcony, and that the foreseeability of the injury created a duty on the part of the defendants to avoid it. To a certain extent, the existence of a duty depends upon the foreseeability of the injury. *See Littleton v. Good Samaritan Hospital & Health Center,* 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988). An injury is foreseeable if a reasonably prudent person would have anticipated that injury was likely to result from the act or omission. *See Menifee,* 15 Ohio St.3d at 77, 472 N.E.2d 707. The reasonably prudent person need not foresee the exact nature of the injury, but only that injury is foreseeable. *See Strother v. Hutchinson,* 67 Ohio St.2d 282, 287, 423 N.E.2d 467 (1981). As the Ohio Supreme Court has observed, however, "foreseeability alone is not always sufficient to establish the existence of a duty." *Estates of Morgan v. Fairfield Family Counseling Ctr.,* 77 Ohio St.3d 284, 293, 673 N.E.2d 1311 (1997). Rather, "there is no duty to act affirmatively for another's aid or protection absent some 'special relationship' which justifies the imposition of a duty." *Id.* Further, even where there is a "special relationship' between the alleged tortfeasor and the injured party, when the injury flows directly from an act of the injured party himself (or herself), the degree of control which the alleged tortfeasor can exercise over that party is an element of the duty inquiry." *Id.* at 297, 673 N.E.2d 1311; *see also id.* at 298, 673 N.E.2d 1311 ("there will be diverse levels of control which give rise to corresponding degrees of responsibility").

It is, of course, foreseeable that an elderly person who walks with the aid of a cane might some day fall down a flight of steps. It does not automatically follow, however, that every person who is aware of that person's choice to navigate steps owes the person a duty to prevent him or her from doing so. Thus, Ms. Lozier's opinion that it was foreseeable that Mr. Jaycox might suffer an injury if he lived on the second floor of a house—an opinion which is not within the scope of Mrs. Lozier's professed area of expertise, and which is no more helpful than any lay person's views on this subject—does not really answer the question of whether the defendants had some special obligation to prohibit Mr. Jaycox from occupying his second-floor room.

 Notwithstanding the lack of Ohio case law imposing a specific duty on social workers to use a particular degree of care when they offer residential choices to their clients, the Court will assume that a social worker has some expertise in the area not shared by the general public, and that the social worker may, as the practitioner of a skilled profession, be held to a standard of care consistent with the duties of that profession. *See Richard v. Staehle,* 70 Ohio App.2d 93, 98, 434 N.E.2d 1379 (Summit

Co.App.1980), *quoting Restatement of Torts 2d*, Section 299A ("one who undertakes to render services in the practice of a profession . . . is required to exercise the skill and knowledge normally possessed by members of that profession. . . ."). Additionally, the Court will assume that the amount of care to be exercised by a social worker is dependent upon the client's ability to make rational choices and to appreciate the dangers inherent in any particular residential setting. Even with those assumptions, however, the Court finds no legal duty running from Mr. Brandyberry to Mr. Jaycox with respect to the dangers posed by the second-floor balcony room at Setty RCH.

First, as noted above, Mr. Jaycox was a competent adult. Although he had some memory problems, and he was diagnosed with some psychological disorders during his June 1996 hospital stay, there is no evidence in this record from which a reasonable juror could conclude that he was significantly less capable than the average person to appreciate the risks involved in living on the second floor of a home and having to go up and down stairs. The same is true with respect to the risks posed by walking out onto a balcony. These were not dangers that were known only to Mr. Brandyberry, nor is there any evidence that he understood them better than Mr. Jaycox did or that he concealed them from Mr. Jaycox. Consistent with the cases discussed above concerning open and obvious dangers, the Court concludes that neither Mr. Brandyberry's greater skill or training, nor Mr. Jaycox's mental or psychological condition, gave rise to a duty to warn beyond the duty (or lack thereof) imposed upon members of the general public.

■ Second, the Court finds, as a matter of law, that Mr. Brandyberry did not possess a degree of control over Mr. Jaycox that gave rise to an affirmative duty to take steps to protect Mr. Jaycox from the risks inherent in a second-floor placement. In most cases where an affirmative duty to protect is implied, the victim is either in the physical control of the alleged tortfeasor (such as in a hospital or prison setting), or it is apparent that the victim's natural ability to protect himself or herself against the consequences of his or her own actions has been eliminated or severely compromised. Under those circumstances, only the alleged tortfeasor has the means available to prevent the harm for which the victim is at risk.

This case presents a vastly different situation. It is not apparent that Mr. Brandyberry had any control over Mr. Jaycox's choice of residential homes. His responsibility was limited to identifying VA-eligible homes and assisting Mr. Jaycox in making arrangements with whichever home he chose. Had Mr. Jaycox elected to remain in his own home, chosen a home in Alaska, or decided to move to a 10th-floor apartment, Mr. Brandyberry could have done nothing about it. He did not force Mr. Jaycox to choose Setty RCH initially or to return there following his hospital stay. Certainly, he could have recommended to Mr. Jaycox that he not choose a second-floor room, but Mr. Jaycox could have disregarded that recommendation, and Mr. Brandyberry would have been powerless to alter that choice. This is not a case where the victim was so mentally impaired that, as a practical matter, the social worker exercised *de facto* control over the placement. Consequently, the Court determines that Mr. Brandyberry had no duty under Ohio law to take steps to protect Mr. Jaycox from whatever risks inherently accompanied Mr. Jaycox's choice to live in a second-floor room.

■ The analysis regarding Setty RCH's duty to Mr. Jaycox is not materially different. Again, the Court is willing to

assume not only that Setty RCH owed a duty of ordinary care to its residents, but that it owed each of them a heightened duty depending upon the nature of their impairments and the foreseeable consequences of those impairments in the residential setting at issue. *See Niece,* 131 Wash.2d at 46, 929 P.2d 420. Again, there is no evidence that Mr. Jaycox's mental or psychological impairments placed him at greater risk of injury from a second-floor placement than the typical group home resident. Further, his relevant physical impairments—some balance problems and the need to use a cane for assistance while walking—were not so severe as to preclude a second-floor placement. Apparently, he was able to negotiate the stairs without incident during his entire stay at Setty RCH. The Court simply cannot conclude that the law imposes a duty on the operators of group homes never to allow residents with mild ambulatory impairments or with memory deficits to occupy upper-floor rooms or to navigate stairways.

The Estate makes much of the fact that Mr. Jaycox's room also had access to a balcony that was part of the fire escape. That fact does not alter the relevant analysis, however. The Court assumes that every group home in Ohio (and perhaps in the nation) which has upper-story occupants also has a fire escape that can be accessed by the residents at all times. The Court further assumes that it might well be negligent to allow persons to reside on those floors if they were not physically capable of accessing the fire escape in the event of a fire. Consequently, although Mr. Jaycox may have had more ready access to the fire escape because it was located directly outside his room, there is nothing in the record suggesting that he was correspondingly at greater risk to find his way out to the fire escape and suffer an injury than if the access had been located elsewhere on the second floor of Setty

RCH. In short, the law does not prohibit group home operators from placing residents who are, relatively speaking, of sound mind and of fair mobility on an upper floor where they have access to a fire escape which must, by operation of building and safety codes, be accessible to them.

■ The final instance of negligence advanced by the Estate is Mr. Brandyberry's decision to leave Mr. Jaycox on the balcony without his cane while Mr. Brandyberry left to make a telephone call. The Court is not persuaded that Mr. Brandyberry's status as a social worker is at all relevant to the duty he owed to Mr. Jaycox as this incident unfolded. Although he was visiting Mr. Jaycox in his capacity as a social worker, he had no specific responsibility to insure Mr. Jaycox's physical safety during the visit that went beyond the general duty imposed upon the public not to do some act that creates a foreseeable risk of injury to another person. There is no evidence that Mr. Brandyberry breached some duty he owed to Mr. Jaycox by discussing matters with Mr. Jaycox that caused him to become angry, or that he somehow facilitated Mr. Jaycox's decision to go onto the balcony. Further, the uncontroverted evidence is that Mr. Brandyberry succeeded in defusing much of Mr. Jaycox's agitation before he left the room, and that he did not believe that Mr. Jaycox was in imminent danger at that moment. Having not created the potentially dangerous situation, Mr. Brandyberry had no legal duty to act to eliminate whatever danger was present, just as any member of the public has no legal duty to attempt to rescue someone whose own actions have placed them in peril. Under these specific circumstances, the social worker-client relationship did not impose a greater duty on Mr. Brandyberry to attempt to "rescue" Mr. Jaycox from the balcony, and the ef-

fort of an untrained person to effect a physical "rescue" may well have caused the very injury that, according to the Estate, Mr. Brandyberry had a duty to prevent.

The Court notes that the parties disagree about whether Mr. Jaycox fell from the balcony, and they each devote a substantial amount of argument to issues relating to the evidence of whether a fall was physically possible. In light of the Court's conclusion that none of the defendants owed Mr. Jaycox a duty here, the precise manner in which the incident occurred is not material to the Court's decision.

In reaching the conclusion that none of the defendants bears legal responsibility for Mr. Jaycox's untimely death, the Court does not wish to appear unsympathetic to the Jaycox family. It is always difficult to suffer the loss of a loved one, and especially so when circumstances suggest that, had certain things been done differently, the loss could have been avoided. Legally, however, Mr. Jaycox retained the ability to make choices about his living arrangements and his daily activities which, while they may not have been ideal, were still his to make. The defendants could and did offer him alternatives, some of which were less favorable than others, but they were not legally required, and perhaps not able, to prohibit him from choosing to live on the second floor of a group home or to make it physically impossible for him to go out on a fire escape. It is only the question of legal responsibility which is before the Court, and on that question, the Court finds for the defendants.

## IV.

For the foregoing reasons, this Court holds that Setty RCH and the VA are entitled to summary judgment as a matter of law. Accordingly, defendants' motions for summary judgment (file docs. # 36 & 37) are granted. Because, given this find-

ing, amending the complaint to add Setty RCH's owners would be futile, the Estate's motion for leave to amend its complaint to add Lester Howard and Kathy Howard as additional defendants (file doc. # 35) is denied. This case is dismissed with prejudice. The Clerk is directed to enter judgment in favor of the defendants.