**HALL et al., Appellants,**

**v.**

**GILL et al., Appellees.**

[Cite as *Hall v. Gill* (1995), 108 Ohio App.3d 196.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950032.

Decided Dec. 29, 1995.

*Derek W. Gustafson,* for appellants.

*Rendigs, Fry, Kiely & Dennis, Thomas G. Shore,* Jr., and *Jeffrey S. Routh,* for appellees.

---

*Per Curiam.*

The plaintiffs-appellants, Ernest L. and Bette Hall, appeal from the trial court's order granting partial summary judgment in favor of the defendants-appellants, Linda Tracy Gill, individually, and Aronowitz, Chaiken & Hardesty ("AC & H"), an Ohio partnership, and its partners individually, on claims for professional negligence and breach of contract. The claims arise as a result of tax advice given to the Halls by Gill, an unnamed partner of AC & H, regarding the consequences of the sale of the Halls' Tennessee home for federal income tax purposes.

The Halls assign two errors: (1) the trial court erred by granting summary judgment to Gill and AC & H on the particular tax issue of whether the Halls' Tennessee home was their principal residence for the purposes of Section 1034, Title 26, U.S.Code, and (2) the trial court erred by failing to find Gill and AC & H negligent based upon the tax advice that was given. For the reasons that follow, we affirm the trial court.

I

The Halls purchased their Tennessee home in August 1976 for approximately $65,000 after Ernest Hall accepted a position as Professor of Electrical Engineering at the University of Tennessee. In 1983 Ernest Hall accepted a professorship at the University of Cincinnati, and he, his wife, and his children moved to Cincinnati. For the first year in Cincinnati they leased a home. In 1984, however, they purchased their current home in Cincinnati.

The Halls placed their Tennessee home on the market in 1983 and eventually leased it on a month-to-month tenancy when they could not find a buyer. Occasionally, Ernest Hall would stay at the home when he returned to Tennessee to perform consulting work for the Oakridge National Laboratory. In January 1988 the Tennessee home finally sold for approximately $130,000. In March 1989 the Halls asked Gill how they should handle the capital gain on the sale of the Tennessee house. Ernest Hall testified in his deposition that he specifically inquired whether it was necessary to purchase a new home in order to defer paying tax on the capital gain from the sale of the Tennessee home. According to Hall, he and his wife were prepared to buy a new home had it been necessary and, in fact, began talking to realtors about selling their current Cincinnati home and looking at homes to buy closer to their church.

On March 15, 1989, Gill sent the Halls a packet of documents under her signature. Included in the documents was an in-firm memorandum concerning the Halls' desire to defer the gain on the sale of the Tennessee home. In that memorandum the Halls' situation was analyzed under Section 1034, Title 26, U.S.Code, as interpreted by the case of *Clapham v. Commr.* (1975), 63 T.C. 505, 1975 WL 3146. The analysis was limited to the specific issue of whether the delay attendant to the sale of the Tennessee home deprived it of rollover treatment. The memorandum did not address the related issue of whether the Halls had satisfied the requirement of Section 1034 that the new residence be purchased within twenty-four months of the sale of the old residence. The memorandum concluded that the Tennessee residence could qualify for the Section 1034 rollover provision, although noting that "each case [involving a delay

due to market contingency] is judged on the 'facts and circumstances' surrounding the transaction." [1]

The package of documents also included a 1988 Form 2119 prepared to claim a postponement of the gain from the sale of the Halls' Tennessee home as well as what Gill described in her letter as a "footnote for your 1988 return to report the sale of your residence in Tennessee." The first sentence of the footnote stated that "[t]he gain from the sale of the taxpayers' residence (Tennessee) is properly excludable under Code Section 1034 since the delay in the sale was due to market exigencies." The final sentence stated: "In accordance with *Clapham v. Comr* 63 TC 505, the taxpayers have rolled over a portion of their gain and properly reduced their basis in their current Ohio residence."

According to the Halls, they interpreted the package of documents Gill sent to them to mean that they could properly roll over the gain on the sale of their Tennessee home based upon the 1984 purchase of their current Cincinnati home. Consequently, the Halls did not purchase a new home. The Halls then prepared their own 1988 federal income tax return and, based upon the documents sent to them by Gill, deferred the gain on the sale of their Tennessee residence under Section 1034.

In May 1990 the Halls were notified by the Internal Revenue Service that their 1988 return was being audited. The IRS subsequently disallowed the deferral and assessed additional taxes and interest amounting to approximately $20,000. The Halls appealed the decision. The result of the Halls' appeal was an IRS decision which affirmed the district director. The IRS decision disallowed the deferral of gain not on the basis that the Tennessee home was no longer the Halls' principal residence, but because they had not met the replacement deadline—in other words because the Halls' current home, having been purchased in 1984, was not purchased within two years of the 1988 sale of their Tennessee home. The IRS decision stated:

---

1. During her deposition Gill admitted that the two primary requirements for application of Section 1034 are that the old residence be the taxpayer's principal residence and that the new residence be purchased within twenty-four months of the sale. She testified that the March 15, 1989, memorandum was prepared by another employee in the tax department of AC & H, Kathy Mitts. Gill testified that Mitts was given the question of whether the gain on the sale of the Tennessee home could be postponed and that she, Gill, agreed with Mitts's conclusion at the time but not now. Gill also testified, inexplicably, that Mitts was not assigned the question of whether the Tennessee residence could qualify as the Halls' principal residence, and that neither Mitts nor she researched that particular issue. Gill, in fact, specifically denied ever providing the Halls an opinion as to whether the Halls' Tennessee residence would qualify as their principal place of residence under Section 1034. She testified that at the time the March 15, 1989, memorandum was written, "the question of principal residence was not focused upon."

"After discussion of these court cases [demonstrating a strict approach in enforcing the replacement deadline] the taxpayer accepted the principle that the statutory replacement period of 24 months would have required him to purchase a new residence in the Cincinnati area between January 27, 1986 and January 29, 1990. Accordingly, the purchase of the Cincinnati residence in September of 1984 would not qualify for the deferral of gain under Internal Revenue Code Section 1034. Since the Hall's [sic] did not meet the statutory replacement period it was unnecessary to determine whether the residence had been converted to rental property as in the *Clapham* case."

According to the deposition testimony of Ernest Hall, Gill accompanied his wife and him to the appeals hearing and admitted that she had made a mistake by not correctly considering the twenty-four-month replacement deadline.

In order to pay the IRS assessment, the Halls unsuccessfully attempted to borrow money on their current home. Finally, in order to obtain the necessary funds, the Halls dipped into Ernest Hall's teachers' retirement fund, incurring additional penalties and interest amounting to $15,399.

The Halls filed suit against Gill and AC & H, alleging that they were damaged by (1) the incorrect advice that Gill had given them, which led to an IRS audit and assessment of penalties and interest, and (2) Gill's failure to advise them that had they purchased a new home within two years of the sale of their Tennessee residence they could have properly deferred the gain on the sale under Section 1034.

Gill and AC & H filed a motion for summary judgment, asserting that at the time the Halls finally sold their Tennessee home it was no longer their principal residence as is required by Section 1034 and, therefore, the gain on the sale of the property was not eligible for deferral regardless of whether the Halls had purchased a new home within two years. This advice was directly contrary to the advice that Gill had given the Halls in her March 1989 memorandum. According to the AC & H's motion for summary judgment, "[e]ven though AC & H may have given erroneous information concerning the availability of rollover treatment regarding the sale of the Halls' Tennessee property, this erroneous information caused the Halls no damage."

The Halls responded to the motion, arguing that the Tennessee home was their principal place of residence under *Clapham* and that, irrespective of this issue, they had been damaged by incurring penalties and interest as a result of Gill's incorrect advice that they could defer the gain under Section 1034 based on the 1984 purchase of their Cincinnati home.

On July 14, 1994, the trial court journalized an entry referring the case to arbitration. On September 24, 1994, however, the trial court entered an order

stating that it was granting Gill and AC & H's motion for summary judgment and that "the remaining issue of Plaintiff's entitlement to damages, if any, in light of this Court's ruling, is referred to arbitration on October 4, 1994."

The arbitration panel subsequently granted judgment in favor of the Halls in the amount of $5,200. Although the basis of the arbitrators' award is not reflected in the record, at oral argument it was established that the arbitrators' award reflected the penalties and interest which the Halls had incurred as a result of Gill's negligent tax advice that the Hall's were entitled to roll over the gain on the sale of their Tennessee home based upon the 1984 purchase of the current Cincinnati home. Neither party appealed the award. On December 20, 1994, the trial court, noting that the arbitrator's award had not been appealed, entered final judgment in favor of the Halls in the amount of $5,250.

## II

■ Although we previously overruled Gill and AC & H's motion to dismiss this appeal, we again raised *sua sponte* at oral argument the issue of appealability and timeliness of the appeal. The trial court's order of September 28, 1994, finding Gill and AC & H's motion for summary judgment to be well taken, must be construed as a decision by the trial court that, as a matter of law, the Hall's Tennessee home was not their principal place of residence and, therefore, the Halls were not damaged a result of Gill's failure to advise them of the necessity of purchasing a new home within twenty-four months of the sale of their Tennessee home in order to take advantage of the Section 1034 deferral. By referring the case to arbitration on the issue of damages, however, the trial court, as we see it, granted judgment to the Halls on their professional negligence claim based upon Gill's incorrect advice that they were entitled to roll over the gain based upon the 1984 purchase of their Cincinnati home. Accordingly, the arbitration panel was to determine the Halls' damages solely with respect to the interest and penalties caused by Gill's incorrect advice.

As noted, the Halls did not perfect an appeal from the September 29, 1994, order although that order effectively determined all liability issues. Moreover, the Halls did not appeal the arbitrator's award entered on October 5, 1994, to the court of common pleas within thirty days as is required to perfect an appeal by Loc.R. 24(S) of the Hamilton County Court of Common Pleas. Because the Halls instead appealed from the December 20, 1994 order confirming the arbitration award, Gill and AC & H maintain that the appeal was not timely filed. See Loc.R. 24(Q).

The Halls argue, conversely, that the issue of liability was not appealable as a result of the trial court's September 24, 1994 order because the order did not contain Civ.R. 54(B) language. We are hard pressed to accept, given the

ambiguities in the order granting summary judgment and the order of reference, that the Halls were not required within thirty days to appeal to the common pleas court, pursuant to Loc.R. 24(S), the arbitration award dated October 5, 1994. However, given the apparent lack of finality and the absence of Civ.R. 54(B) certification in the trial court's September 29, 1994 order, as well as the ambiguities surrounding the order of reference, we conclude that the Halls' appeal was timely pursuant to R.C. 2505.02 and that this court has subject matter jurisdiction.

III

The Halls contend, under their first assignment of error, that the trial court erred by granting summary judgment to Gill and AC & H. Specifically, the Halls argue that the trial court erred by agreeing with Gill and AC & H that the gain on the sale of their Tennessee residence could not be deferred under Section 1034 because, at the time of its sale, their Tennessee home was no longer their principal residence for the purposes of Section 1034. As authority for their position that their Tennessee home was still their principal residence at the time of its sale, they rely upon the decision of the Tax Court in *Clapham, supra*. Gill and AC & H argue, conversely, that *Clapham* is distinguishable from the Halls' case, which is governed by the decision in *Stolk v. Commr.* (1963), 40 T.C. 345, 1963 WL 1601, approved in *Thomas v. Commr.* (1989), 92 T.C. 206, 1989 WL 6219. According to Gill and AC & H, *Stolk* and *Thomas* make clear that, as a matter of law, it was the Halls' Cincinnati home which was their principal residence at the time they sold their Tennessee home.

Section 1034, Title 26, U.S.Code, provides in pertinent part:

"(a) Nonrecognition of gain. If property (in this section called 'old residence') used by the taxpayer as his principal residence is sold by him and, within a period beginning 2 years before the date of such sale and ending 2 years after such date, property (in this section called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence."

In *Stolk*, the Tax Court considered the case of a taxpayer who, during the fall of 1950, rented an apartment in New York City. He resided there during the week with his family. On the weekends, however, he would return to his home in Chappaqua, New York. In 1953 the taxpayer vacated his Chappaqua residence, listing it for sale. The home did not sell, however, until July 1955. In September 1955 the taxpayer acquired a Virginia farm while maintaining his residence in the New York City apartment. He then attempted to invoke the

nonrecognition provisions of Section 1034 on the basis that the Chappaqua home was his principal residence. The Tax Court disagreed, holding that when the taxpayer vacated the Chappaqua house in 1953 with no intention of returning there or using it again as a residence, he abandoned the property as his principal residence. Interpreting Section 1034, the Tax Court stated:

"The phrase 'used by the taxpayer as his principal residence' means habitual use of the old residence. The antithesis is nonuse of property as the principal residence." *Stolk, supra,* at 40 T.C. 355.

Twelve years later, in *Clapham,* the Tax Court considered the case of taxpayers who vacated their San Francisco area home in August 1966 due to the fact that the husband's employer was opening a Los Angeles office. The taxpayers had unsuccessfully attempted to sell their Mill Valley house from May until August 1966 but received no offers. When they moved to Los Angeles in August 1966 the Mill Valley house was left vacant and for sale. The taxpayers, in turn, rented a house in the Los Angeles area from August 1966 until September 1968. During that period they received an offer to lease the Mill Valley house, which they accepted for financial reasons although their primary wish was to sell the house. In September 1968 the taxpayers finally purchased a house in the Los Angeles area. Eventually, in June 1969, the taxpayers were able to sell their Mill Valley home.

In holding that the taxpayers were entitled to the benefits of Section 1034, the Tax Court in *Clapham* stated that its previous decision in *Stolk* was not meant to establish a rule of law, but merely to "identify facts and circumstances deemed relevant" in determining whether an old residence constituted the taxpayer's principal residence at the time of sale. *Clapham,* 63 T.C. at 508.

Furthermore, the Tax Court made clear that occupancy of the former residence by the taxpayer was not necessary for it to be considered the taxpayer's principal residence, and that temporary rental of the former residence pending sale was not inconsistent with the status of principal residence. *Id.* at 508–509.

Significantly, the Tax Court gave little or no weight to the fact that the taxpayers had moved out of the Mill Valley home and lived in a leased home in Los Angeles from August 1966 until September 1968, and a purchased home from September 1968, before selling their Mill Valley home in 1969. Rather, the Tax Court emphasized that when the sale of the old residence is necessitated by a change in job location, Congress views the situation as an "involuntary transfer," entitling the taxpayer to relief from the immediate imposition of capital gains tax. According to the Tax Court:

"There is nothing in the legislative history to indicate this clearly expressed remedial purpose is inapplicable when a poor real estate market or the unavaila-

bility of mortgage money requires an individual to lease his old premises for a temporary period concurrent with and ancillary to sales efforts. To hold otherwise would make relief dependent on the vicissitudes of the real estate and money markets." *Id.*

After noting that the various periods in which the taxpayers had rented out their Mill Valley home were necessitated by the "exigencies of the real estate market" and were not motivated by a desire to hold the property for rental income, the Tax Court held that the Mill Valley home was the taxpayers' principal residence in 1969 although they had moved out of it in 1966 and since lived in two separate homes in a completely different part of the state. *Id.*, 63 T.C. at 512.

Fourteen years later, in *Thomas*, the Tax Court approved the language in *Stolk* that the term "principal residence" means one's main place of residence. However, the Tax Court reiterated its ruling in *Clapham* that "there is no requirement that the taxpayer actually occupy the putative old residence at the time of its sale" while also noting that "the property's status as a principal residence can be more uncertain when the taxpayer is not occupying it * * *." *Thomas, supra,* 92 T.C. at 242. The Tax Court then stated:

"In cases where a taxpayer lived in more than one place, in deciding which place was the taxpayer's principal place of residence and whether a residence retained its status as principal residence at the time it was sold, we have taken into account such factors as: (1) the amount of time spent at one residence as opposed to another; (2) whether the taxpayer abandoned the residence with the intent not to return and his nonuse of the property was substantial from the time he left the property; and (3) whether a temporary rental of a residence was necessitated because of an adverse real estate market as opposed to converting a residence into a temporary rental for the production of income." (Citations omitted.) *Id.*, 92 T.C. at 242.

The Tax Court stated additionally, in language which bears emphasis:

"The foregoing factors are not exclusive nor an exhaustive list but merely illustrate that we must weigh all the facts and circumstances of a particular case in deciding whether a particular property is a principal residence. Clapham v. Commissioner, 63 T.C. at 508. In addition, what might appear as a relevant factor in one case may have no relevance in another case." *Thomas,* 92 T.C. at 242.

In arguing that the holding of *Stolk* compels the conclusion that the Halls' Tennessee home was not their principal residence as a matter of law, Gill and AC & H argue that it is the controlling precedent because the Halls, like the taxpayer in *Stolk*, had two residences (one rented, one purchased) prior to the

sale of their old residence. This argument is unpersuasive, however, because the taxpayers in *Clapham* also had two residences (one rented, one purchased) before selling their Mill Valley home. Moreover, Gill and AC & H argue that, based upon the factors elucidated in *Thomas*, the Halls' Tennessee residence was no longer their principal residence because the Halls "spent the vast majority of their time in their Cincinnati residence." The taxpayers in *Clapham*, however, spent *all* their time at their Southern California home, having completely abandoned their Mill Valley residence.

■ Clearly, as the Tax Court stated in *Clapham*, *Stolk* was not intended to enunciate a rule of law. Rather, as the Tax Court made clear in *Clapham* and *Thomas*, each case is judged on its particular facts and circumstances, and "what might appear as a relevant factor in one case may have no relevance in another case." *Thomas, supra*, 92 T.C. at 242. Certainly there are many aspects of the Halls' case which are similar to that of the taxpayers in *Clapham*. This was, in fact, the conclusion drawn by Gill in her March 15, 1989 memorandum. It is also significant that the IRS, in its written decision, did not disallow the deferral of gain on the Tennessee property because it was not the Halls' principal residence; rather, the IRS specifically reserved that issue and disallowed Section 1034 treatment because the twenty-four-month replacement rule had not been satisfied.

We hold, therefore, that it cannot be said as a matter of law that the Halls' Tennessee residence was not their principal residence for the purposes of Section 1034. The trial court therefore erred in finding Gill and AC & H's motion for summary judgment to be well taken on this issue.

■ It is well settled, however, that a trial court may be right for the wrong reasons. In this regard, we find it necessary to review the issues that remain at this point. To establish a claim for accountant negligence, the client must establish that the accountant failed to exercise the skill and knowledge normally possessed by members of that profession in good standing in similar communities, and that he or she suffered a pecuniary loss as a result of justifiable reliance upon information or advice given by the accountant. *See Richard v. Staehle* (1980), 70 Ohio App.2d 93, 98–99, 24 O.O.3d 121, 124, 434 N.E.2d 1379, 1384 (applying Restatement of the Law 2d, Torts [1965], Sections 299A and 552). While an accountant has generally no duty to advise a client on legal matter, if he does, he has a duty to offer correct advice. *Id.* at 98, 24 O.O.3d at 124, 434 N.E.2d at 1384.

Assuming that the Halls can show that it was negligent for Gill not to advise them properly of the strict necessity of purchasing a home within twenty-four months of the sale of their Tennessee home, they must still demonstrate that this

omission proximately caused them damage. To do this, the Halls must demonstrate that either the IRS or the Tax Court would have allowed them to treat their Tennessee home as their principal residence under Section 1034 when viewed in light of *Stolk* and *Clapham* and the factors outlined in *Thomas*. As we have just noted, however, each case is treated individually and "what might appear as a relevant factor in one case may have no relevance in another case." This being so, absent an official ruling by the IRS or the Tax Court, one can only speculate as to what factors either the IRS or the Tax Court would have deemed relevant in this case. On appeal, the Tax Court could have decided that the Halls' situation was more like that in *Stolk* than that in *Clapham* and determined that the Halls' Tennessee home was no longer their principal residence once they purchased their Cincinnati home in 1984.

In *Pietz v. Toledo Trust Co.* (1989), 63 Ohio App.3d 17, 577 N.E.2d 1118, a case involving damage claims by trust beneficiaries against the testator's attorney and trust company, the court held that the claims were too speculative to support recovery because of the uncertainty regarding the state of the trust and the tax law in effect at the time of the testator's death. Summarizing the general rule, the court stated:

"The general rule for the recovery of compensatory damages is that injury and the resulting damage must be shown with certainty and not be left to conjecture and speculation. *Swartz v. Steele* (1974), 42 Ohio App.2d 1, 5, 71 O.O.2d 46, 48, 325 N.E.2d 910, 914–914. It is uncertainty as to the *existence* of damages, not uncertainty as to the amount, which precludes recovery. *Accurate Die Casting Co. v. Cleveland* (1981), 2 Ohio App.3d 386, 391, 2 OBR 459, 464–465, 442 N.E.2d 459, 464–465. *Injury or damage is a necessary element of a cause of action for negligence, without which summary judgment can be granted.* *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 24 OBR 403, 494 N.E.2d 1091." (Emphasis added.) *Pietz, supra,* 63 Ohio App.3d at 22, 577 N.E.2d at 1122.

We find this rule applicable here. Clearly any factfinder asked to determine, in the absence of an official ruling, whether the IRS or the Tax Court would have considered the Halls' home their principal residence for the purpose of Section 1043 would necessarily be speculating given the vagaries of the factors enunciated in *Thomas* and the conflicting nature of the Tax Court's decisions on this issue. The only way to have determined this issue with any certainty was to have received a ruling from the IRS or the Tax Court.

We hold, therefore, that Gill and AC & H were entitled to judgment as a matter of law on the claim of damages stemming from Gill's failure to properly advise them of the twenty-four-month replacement rule, because the existence of damages is too speculative to support recovery. *Pietz, supra.* The trial court

thus did not err when it granted summary judgment to Gill & AC & H on this claim, although for a different reason.

The Halls' first assignment of error is, accordingly, overruled.

## IV

The Halls' second assignment of error contends that the trial court's order granting summary judgment for Gill was erroneous as to the issue of Gill's negligence. The assignment is specious. The reference of the issue of damages to arbitration assumes the trial court's finding of negligence on the part of Gill.

Based upon the foregoing, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GORMAN, P.J., DOAN and PAINTER, JJ., concur.