THE AETNA CASUALTY AND SURETY
COMPANY, nka Travelers Casualty and
Surety Company of America, Plaintiff,

v.

THE LEAHEY CONSTRUCTION
COMPANY, INC., et al.,
Defendants.

No. 1:97–CV–1691.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 14, 1998.

Barry J. Miller, Susan V. Belanger, Arter & Hadden, Cleveland, OH, James F. Koehler, Timothy John Fitzgerald, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Travelers Cas. and Sur. Co. of America.

Mark B. Cohn, McCarthy, Lebit, Crystal & Haiman, Cleveland, OH, Joshua R. Cohen, Jonathan M. Yarger, Ellen M. Maglicic, Susan L. Joplin, Kohrman, Jackson & Krantz, Cleveland, OH, Phyllis Ann Ulrich, Carlisle, McNellie & Rini, Cleveland, OH, for Leahey Const. Co. Inc. and Leahey General Contracting & Management Corp., Patrick J. Leahey and Susan Leahey.

Leahey General Contracting & Management Corp., pro se.

Patrick Francis Haggerty, Daniel R. Warren, Suzanne Bretz Blum, Toni Joy Querry, Thompson, Hine & Flory, Cleveland, OH, for Key Bank Nat. Ass'n (OHIO), KeyCorp and Edward Donnelly.

Richard S. Gurbst, Joseph C. Weinstein, George M. von Mehren, Squire, Sanders & Dempsey, Cleveland, OH, for Albert C. Bersticker.

Albert C. Bersticker, Hunting Valley, OH, pro se.

William T. Rini, Phyllis Ann Ulrich, Carlisle, McNellie & Rini, Cleveland, OH, for Mark J. Elmore and Mark J. Elmore C.P.A., Inc.

## OPINION AND ORDER

GWIN, District Judge.

On May 21, 1998, Defendants KeyBank National Association (Ohio), KeyCorp, and Edward Donnelly (collectively "KeyBank defendants"), Defendants Mark J. Elmore and Mark J. Elmore, C.P.A., Inc. (collectively "Elmore defendants") and Defendant Albert C. Bersticker filed motions for summary judgment [Docs. 132, 134 and 135, respectively]. In their motions for summary judgment, defendants seek judgment as to all claims made by Plaintiff Aetna Casualty and Surety Company (nka "Travelers").

In this action, Plaintiff Travelers sues the defendants to recover damages resulting from an alleged scheme to defraud Plaintiff Travelers. Travelers says the defendants fraudulently misrepresented, and conspired to misrepresent, the financial condition of Defendants Patrick and Susan Leahey, the Leahey Construction Company and the Leahey General Contracting and Management Corporation (collectively "Leahey defendants"). As a result of this claimed fraud, Plaintiff Travelers says it issued security bonds to the Leahey defendants and incurred resulting damages when the Leahey General Contracting and Management Corporation defaulted on a construction project.[1]

---

1. For purposes herein, any reference to Aetna should be construed as to the present plaintiff in the case, Travelers. Travelers purchased Aetna. Plaintiff Travelers is a Connecticut corporation engaged in the business of issuing surety bonds. Defendants Leahey Construction Company and Leahey General Contracting and Management Corporation ("Leahey Contracting") are Ohio corporations engaged in the business of residential and commercial construction. Leahey Contracting is owned by Defendants Patrick and Susan Leahey. Defendant KeyBank is a subsidiary of KeyCorp and is engaged in the private banking and lending business. Defendant Edward Donnelly is an employee of KeyBank in the bank's private banking group. Defendant Albert Bersticker is a member of KeyBank's Board of Directors and is the father of Defendant Susan Leahey. Defendant Mark J. Elmore is a principal and employee of Mark J. Elmore C.P.A., Inc. Elmore provides accounting services to Leahey Contracting.

In ruling on the instant motions, the Court considers whether there is sufficient evidence in the record to support Plaintiff Travelers's claims against the defendants. In doing so, the Court decides whether genuine issues of material facts exist such to make summary judgment in this case inappropriate. For the reasons that follow, the Court concludes that material issues of fact exist as to Counts I, II, VI, VII, VIII, IX and X to require a trial. The Court finds that defendants should receive judgment as to Counts III, IV, and V. Accordingly, the Court grants in part and denies in part the defendants' motions for summary judgment.

## I. Facts

In 1996, Defendant Leahey General Contracting sought to expand its primary business of building high-end residential properties to include commercial construction and public works projects. Because construction on public works projects generally involves higher risk for incomplete projects, public entities often require contractors to secure surety bonds to guarantee completion of their work. Often, sureties such as Plaintiff Travelers provide contractual guarantees to the project customer while retaining rights of indemnity against the contractor should the contractor fail to perform.

In the summer of 1996, Patrick Leahey sought a surety for certain construction projects. In July 1996, Patrick Leahey's insurance agent, David Black, at the James B. Oswald Company, introduced Leahey to Aetna. Initially, Aetna assigned Stan Halliday to the Leahey account. Halliday gathered preliminary information from Leahey in order to evaluate the companies. After gathering this preliminary information, Halliday had concerns about the Leahey companies' financial condition.

Because of these concerns about the Leahey defendants financial condition, Halliday conditioned Aetna's extension of bonding. Before Aetna issued bonding, it required Leahey to put $275,000 into the company. As part of this agreement, Leahey would personally loan the money to the company. Leahey would subordinate his rights to repayment of those loans to Aetna.

Leahey represented to Halliday that getting $275,000 was not a problem because he had access to a trust which had been set up by his wife's family, the Berstickers, and he could get access to "family money" as the source of the $275,000. To obtain Aetna as a surety on Leahey's projects, Halliday told Leahey that the money could not be money which he borrowed from a bank. Aetna thus required Patrick Leahey to invest new capital in his companies to obtain surety bonds for the expansion of his business.

Although he had been told that his investment of capital could not be funded by a loan, Defendant Patrick Leahey sought a $275,000.00 personal loan from the private banking division of Defendant KeyBank in early July 1996.

In making application to Defendant KeyBank for a loan, Leahey told KeyBank's private banking agent, Defendant Edward Donnelly, that the purpose of the loan was to secure approval from a new bonding company. After evaluating the financial background of both Leahey personally and his company, KeyBank denied Leahey's initial request for a loan.[2]

After having been denied the loan, Patrick Leahey contacted Defendant Donnelly to propose a plan whereby KeyBank could issue the $275,000.00 loan.[3] Leahey's proposal suggested that KeyBank issue the loan for a short-term period. Leahey further represented that his father-in-law and KeyCorp director, Defendant Al Bersticker, would guarantee the loan. On July 24, 1996, Defendant Donnelly memorialized this proposal in a memo to Patrick Leahey. The memo provides as follows:

---

2. There is some dispute as to whether Defendant KeyBank formally denied Patrick Leahey's initial loan request.

3. The record shows that Patrick Leahey informed Defendant Donnelly the money was needed to provide a "snapshot" of Leahey General Con-

tracting's financial status to the bonding company. The parties dispute the extent to which the defendants knew that Plaintiff Travelers (or alternatively, Aetna) had agreed to provide a surety bond to Patrick Leahey or his company.

The funds are being used to increase the bonding capacity of ~~Leahey Construction~~ Leahey General Contracting and Management Corp. You have been advised by the bonding agent to deposit these funds into ~~Leahey Construction~~ Leahey General Contracting and Management Corp.'s checking account. You need these funds to be there at July 96' month-end.

Functionally, we can deposit the funds for you into the account on July 29 and ~~on~~ per your instructions, withdraw the funds from the account on August 2 and repay the loan. Once the loan has been repaid on Aug. 2, the loan and guarantee with Mr. Bersticker's pledge will be cancelled.

Mr. Bersticker will need to sign a pledge form and the loan will be reported to the Board, since he is a Director.

Near July 24, 1996, Patrick Leahey responded to Donnelly's memo. Leahey asked Donnelly to "re-write this memo for presentation to Al. He has no problem with this." [4]

On Friday, July 26, 1996, Defendants Bersticker and Donnelly met and signed the guarantee.[5] The loan papers were prepared and approved that same day. Defendant KeyBank's paperwork reflects the loan was for "bonding purposes." On Monday, July 29, 1996, loan proceeds in the amount of $275,000.00 were disbursed into Defendant Leahey Contracting's account at KeyBank. Four days later, on Friday, August 2, 1996, the loan was repaid out of the same Leahey Contracting account at KeyBank.

Shortly after the above transactions occurred, Plaintiff Travelers received evidence that Defendant Patrick Leahey had provided Leahey Contracting $275,000 additional capital required to obtain the surety bonds.[6] Then, on August 8, 1996, Defendant Patrick Leahey executed the required subordination agreement favoring Plaintiff Travelers. This agreement was executed despite the fact that the loan had been repaid on August 2, 1996. Defendant Patrick Leahey also executed subordination agreements favoring Plaintiff Travelers on January 2, 1996.

Defendant Mark Elmore, doing business as Mark Elmore, CPA, Inc., served as the accountant for Leahey Contracting. Defendant Elmore employed an assistant, Jim Ashworth. During the course of preparing Leahey Contracting's June 30, 1996, financial statements, Ashworth discovered the four-day $275,000.00 loan. Finding it unusual, Ashworth reported it to Elmore. Near August 1996, Plaintiff Travelers contacted Defendant Elmore to obtain details about Leahey Contracting's financial condition. Travelers did so to verify whether the business had the financial resources necessary to support a surety relationship.

On September 9, 1996, Defendant Elmore sent Mr. David Black, an assistant vice president at the James B. Oswald Company, Leahey's insurance agent, a draft financial statement for period ending June 30, 1996. In this draft statement, Elmore confirmed that Patrick Leahey had loaned his business $275,000.00 in late July 1996. On September 20, Defendant Elmore sent another fax to Mr. Black where he again confirmed Patrick Leahey's loan to Leahey Contracting.[7]

In addition to his communications with Mr. Black, Defendant Elmore met and had telephone conversations with Mr. Douglas Bend-

4. Patrick Leahey's handwritten notation responding to Defendant Donnelly's memo states: Ed—Please re-write this memo for presentation to Al. He has no problem w/ this. However, I need pledge form for Al to sign by Friday as he will be traveling for next 3½ weeks in Europe. Patrick

5. Plaintiff Travelers also contends that Defendant Bersticker's signature on the guarantee was not properly witnessed. As related, Travelers says that after securing Bersticker's signature on the agreement, Defendant Donnelly returned to Key-Bank where his assistant, Debora Siebert, signed the guarantee as a witness despite not being present when Bersticker executed the guarantee.

6. Plaintiff Travelers was provided with copies of two promissory notes favoring Defendant Patrick Leahey. One note, dated April 5, 1996, reflects a loan by Patrick Leahey to Leahy Contraction for $162,000.00. The second note, dated July 29, 1996, reflects the $275,000.00 loan to Leahey Contracting by Patrick Leahy and guaranteed by Defendant Bersticker.

7. The parties dispute the extent to which Defendant Elmore verified the validity of the loan and whether he knew or disclosed that the $275,-000.00 loan had been repaid to KeyBank on August 2, 1996.

er, the construction services manager at Plaintiff Travelers. Mr. Bender was responsible for deciding whether to issue the surety bonds to Leahey Construction. These discussions occurred near October 14, 1996, and in early December 1996. Bender and Defendant Elmore discussed the company's financial condition and Patrick Leahey's related shareholder loans and subordination agreements.[8]

Subsequent to the events outlined above, Plaintiff Travelers issued performance bonds on at least three Leahey Contracting projects. These included bond obligations effective October 7, 1996 (the "University of Toledo project"), November 8, 1996 (the "Madison Township project"), and February 20, 1997 (the "Kirkham project"). Sometime after issuing the bonds, Leahey General Contracting and Management Corporation defaulted on these projects.[9] As the result of these defaults, Plaintiff Travelers then became liable on its surety obligations. Plaintiff Travelers paid near $2.9 million on these surety obligations.

Further, near July 9, 1997, Leahey Contracting received a draw payment check in the amount of $143,348.88 from the Madison Township project. The check was presented to Defendant KeyBank and then converted into a cashier's check payable solely to Defendant Patrick Leahey. Plaintiff Travelers alleges this check was never deposited into Leahey Contracting's general account at KeyBank but rather was paid directly to Patrick Leahey in an effort to defraud creditors and circumvent Leahey's subordination agreements with Travelers.

Plaintiff Travelers now sues these defendants for fraud, conspiracy and other related actions. Plaintiff Travelers alleges the defendants collectively and intentionally withheld and misrepresented necessary and valuable information concerning Defendant Leahey Contracting's financial stability. In this regard, Travelers contends the defendants acted together to formulate and perpetuate a scheme to defraud Plaintiff Travelers into issuing surety bonds on Leahy's construction projects.

Considering these facts, the Court decides whether Plaintiff Travelers gives sufficient evidence of its claims to survive summary judgment.

## II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of a motion for summary judgment, courts shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256, No. 96–4267, slip op. at 6–7 (6th Cir. April 2, 1998). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, courts should determine "whether the evidence presents a sufficient disagreement to require submission to a jury

---

**8.** The parties also dispute the extent to which Defendant Elmore withheld pertinent information about the $275,000.00 from Mr. Bender or others at Plaintiff Travelers.

**9.** Near June 2, 1997, Plaintiff Travelers received notice of default from the owner of the University of Toledo project. This notice demands that Travelers either complete the project or indemni-

fy the University of Toledo for all related costs in completing the project. Near June 6, 1997, Plaintiff Travelers also received notice of default from the architects on the Kirkham project. Plaintiff Travelers has also received claims and demand from the parties to the Village of Madison project.

or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505. Applying these standards, the Court evaluates Plaintiff Travelers's claims.

### III. Claims

On December 2, 1997, Plaintiff Travelers filed an eleven count complaint against the defendants. In it, Plaintiff Travelers states the following claims: Count I makes claims against Defendants Donnelly, Bersticker, KeyCorp and KeyBank, Defendants Leahey Construction, Patrick Leahey and Susan Leahey, and Defendants Mark J. Elmore and Mark Elmore, CPA, Inc. for fraud, aiding and abetting fraud, and conspiracy to commit fraud; Count II makes claim against the Elmore defendants for negligence; Count III makes claim against the KeyBank defendants for tortious interference with prospective business advantage; Count IV makes claim against the KeyBank defendants for tortious interference with contract; Count V makes claim against the KeyBank defendants for fraudulent transfer of $270,000.00; Count VI makes claim against the Leahey defendants for quia timet, exoneration and indemnity; Count VII makes claim against the Leahey defendants for breach of contract; Count VIII makes a general claim against the defendants for breach of fiduciary duty; Count IX makes claim against Patrick and Susan Leahey for conversion of $143,348.88; and Count X makes claim against the KeyBank defendants for fraudulent transfer of $143,-348.88.[10]

### IV. Discussion

The Court first considers Travelers's claims against the defendants for fraud, aiding and abetting, and conspiracy to commit fraud as alleged in Count I of the amended complaint.

10. Count XI reincorporates and realleges each and every allegation contained in the complaint.

11. In *Smith,* the Court states:
As to the contention that the bank had a duty to volunteer information about [the dealership's] financial records and undercapitalization, ... the short answer, again, is that if [the plaintiff] had wanted such information from the bank he ought to have asked for it.....

### A. Fraud, Aiding and Abetting and Conspiracy to Commit Fraud

To establish a claim for fraud under Ohio law, a plaintiff must prove the following elements:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm–Cleveland, Inc.,* 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987) (citing *Burr v. Stark County Bd. of Commrs.,* 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986)). A plaintiff is not required to show that a defendant had actual knowledge of the fraud. In Ohio, it is enough to show that a defendant acted recklessly. See *Nickels v. Koehler Management Corp.,* 541 F.2d 611, 617 (6th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). A defendant may be liable for fraud if the plaintiff establishes the defendant's actions or conduct was not in accordance with the truth. *Russ v. TRW, Inc.,* 59 Ohio St.3d 42, 49, 570 N.E.2d 1076 (1991); *Miles v. McSwegin,* 58 Ohio St.2d 97, 99–100, 388 N.E.2d 1367 (1979). Further, in cases against banks alleging fraud or breach of duty, the Sixth Circuit, in *Smith v. American Nat'l Bank & Trust Co.,* 982 F.2d 936 (6th Cir.1992), stated that banks, as a matter of law, owe no duty to plaintiffs to "answer questions that [the plaintiff] never asked" or to disclose or volunteer information never requested. *Id.* at 943.[11]

The fact that the bank was in the business of lending money did not subject it to any special duty of disclosure. A lending institution has no duty to disclose based on its role as a lender.... And knowledge of a customer's weak financial situation "amounts neither to a duty to disclose this information nor to knowledge of fraud."
*Id.* at 943–44 (citations omitted).

■ In the instant case, the KeyBank, Leahey and Elmore defendants say they are entitled to summary judgment because Plaintiff Travelers fails to give sufficient evidence of a connection or duty between Travelers and the defendants such to establish fraud. The Court disagrees. Specifically, Plaintiff Travelers gives sufficient evidence that Key-Bank representatives, including Defendants Donnelly were aware of Leahey's surety agreement negotiations with Travelers. Plaintiff gives like evidence that Bersticker was aware of Leahey's surety negotiations with Plaintiff Travelers. Plaintiff Travelers also gives evidence that the defendants may have acted recklessly or fraudulently in providing Leahey with the $275,000.00 loan. This evidence includes Defendant Donnelly's July 24, 1996 memo outlining the short-term nature of the loan, and Patrick Leahey's statement to Donnelly that the loan was to provide a "snapshot" to obtain bonding.[12] This evidence presents trialable issues regarding the extent to which the funds were knowingly or recklessly obtained or used to inflate Leahey Contracting's financial status in order to secure surety bonds.

Defendant Bersticker likewise suggests that he had no knowledge of Patrick Leahey's discussions with Travelers about the short-term use of the loan to secure a surety agreement with Travelers. However, the record suggestions inconsistencies about Bersticker's motivation for guaranteeing the $275,000.00 loan for Patrick Leahey and his daughter's knowledge that the loan even existed. These inconsistencies create material issues of fact requiring consideration at trial.

Defendant Elmore similarly argues that his communications with the James B. Os-wald Company and Travelers did not violate generally acceptable accounting practices or any related professional duty owed to these entities in his capacity as Leahey Contracting's accountant. However, the Court concludes material issues exist regarding the extent to which, if any, Elmore investigated the July 29, 1996 loan to Leahey Contracting and what efforts he made to disclose information about the loan to interested or inquiring parties, including Travelers. The Court further concludes that there are material issue of fact regarding the extent Plaintiff Travelers sought to obtain information about Leahey Contracting from the individual defendants, and the extent to which Travelers actually relied or was harmed by any alleged misrepresentations or omissions by any or all of the defendants.

Because genuine issues of material fact exist regarding Plaintiff Travelers's claim for fraud, summary judgment is inappropriate. The Court also finds that material issues exist as to Travelers's claims for civil conspiracy and aiding and abetting.

■ To succeed on a claim for civil conspiracy, a plaintiff must show the defendants shared a common understanding or design to commit an unlawful act. *Collyer v. Darling,* 98 F.3d 211, 229 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997). It is not necessary to show that the defendants allegedly involved in the conspiracy knew all other conspirators or had knowledge of the full scope of the conspiracy. *United States v. Carr,* 5 F.3d 986, 990 (6th Cir.1993). In *Collyer,* the Sixth Circuit set forth the standard for proving civil conspiracy as follows:

**12.** Defendant Patrick Leahey described his relationship with KeyBank and discussions with Mr. Donnelly about the purpose of the loan as follows:

Q. Okay. If, in fact, you put $275,000 into the company?
A. Uh-huh.
Q. Into its checking account on July 29th, where did the money come from?
MR. COHN: Objection. But you can answer.
A. What relevance is that?
THE WITNESS: Do I have to answer this question?
MR. COHN: Yeah.

A. Ed Donnelly is my private banker at Key-Bank, and I called him up and said to secure a bonding line or maintain a bonding line or increase the bonding line or whatever the case may have been where I had to put money into the company to provide a snapshot so that my financials would support whatever bond line I was asking for, and Dave Black would tell me obviously the amount of money that needed to be put in.
Q. Okay. So how long was the money in the bank, in the checking account for the company?
A. A week.
Transcript of Patrick Leahey at 82–83.

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.* at 229 (quoting *Hooks v. Hooks,* 771 F.2d 935, 943–944 (6th Cir.1985)).[13]

Applying the above standard to the facts of the instant case, the Court concludes that a jury must weigh the evidence and determine the extent to which, if at all, the KeyBank, Leahey and Elmore defendants purposefully engaged in a common scheme or design to conceal or manipulate Leahey Contracting's financial condition. *LeFort v. Century 21–Maitland Realty Co.,* 32 Ohio St.3d 121, 126, 512 N.E.2d 640 (1987). Because the Court is unable to say, as a matter of law, that there "is no proof tending to establish a conspiracy," this issue requires determination by a jury. *Id.* (citations omitted). Having decided this, the Court turns to Plaintiff Travelers's claim for aiding and abetting.

Although the Ohio Supreme Court has not fully recognized civil liability for aiding and abetting a fraud, Ohio courts have often applied § 876 of the Restatement (Second) of Torts when considering such claims.[14] *See Andonian v. A.C. & S., Inc.,* 97 Ohio App.3d 572, 574, 647 N.E.2d 190 (Ohio App.1994). Section 876 of the Restatement outlines elements for persons acting in concert and provides:

Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of another, a person is liable if he (a) orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result, and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement of the Law (Second), Torts, § 876, at 315. See also *Kuhn v. Bader,* 89 Ohio App. 203, 210–11, 101 N.E.2d 322 (Ohio App.1951).

■ In Ohio, to succeed on a claim for aiding and abetting liability in the context of § 876, a plaintiff must show that the primary actor committed a wrongful act causing injury, the aider and abettor knew of his or her role in the commission of wrongful act, and the aider and abettor knowingly provided substantial assistance to effect the wrongful act. *Id.* at 574. Further, a plaintiff needs to produce evidence that, at a minimum, supports a reasonable inference that a defendant had actual knowledge of the fraud.[15]

As discussed, Plaintiff Travelers provides sufficient evidence that the defendants here may have known that Leahey Contracting was negotiating a surety relationship with Travelers. Further, there is evidence that the defendants may also have known that the $275,000.00 loan was to be used only temporarily to enhance the appearance of Leahey

13. *See also Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995); *LeFort v. Century 21—Maitland Realty Co.,* 32 Ohio St.3d 121, 126, 512 N.E.2d 640 (1987).

14. In *Kurczi v. Eli Lilly and Co.,* 113 F.3d 1426 (6th Cir.1997), the Sixth Circuit opined that when evaluating a claim not formally recognized by a state's highest court, a district court should take into consideration " 'the state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states' " as well as any intermediate court of appeals opinions that have addressed the particular issue. *Id.* at 1429 (quoting *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995)).

15. *See Seattle–First Nat'l Bank v. Carlstedt,* 678 F.Supp. 1543, 1549 n. 3 (W.D.Okla.1987) (stating that aiding and abetting liability requires proof of knowledge by the aider and abettor of the fraud perpetrated, not merely knowledge of the undisclosed material facts).

Contracting's financial condition. There is also sufficient evidence that the defendants may have been aware of, or themselves made, misrepresentations to Plaintiff Travelers concerning either the company's or Patrick and Susan Leahey's personal finances. Because these issues exist, summary judgment on Travelers's claim for aiding and abetting is inappropriate.

Accordingly, the Court denies the defendants' motions for summary judgment on Plaintiff Travelers's claims for fraud, conspiracy to commit fraud, and aiding and abetting under Count I of the amended complaint. The Court next evaluates Travelers's negligence claim against Defendants Elmore under Count II.

### B. Negligence and Misrepresentation

■ In Count II of its amended complaint, Plaintiff Travelers makes claim against Defendants Elmore for negligence. To succeed on a claim for accountant negligence under Ohio law, a plaintiff must establish the following elements: (1) a duty between the accountant and his client; (2) the accountant failed to exercise the necessary skill and knowledge normally possessed by members of his profession; (3) the client justifiably relied upon information or advice given by the accountant; and (4) the client suffered pecuniary loss. *Hall v. Gill*, 108 Ohio App.3d 196, 205, 670 N.E.2d 503 (Ohio App.1995). See also *Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 156–57, 436 N.E.2d 212 (1982).

■ An accountant may also "be liable in negligence for careless financial misrepresentations relied upon by actually foreseen and limited classes of persons." *Haddon*, 70 Ohio St.2d at 157, 436 N.E.2d 212 (quoting

*Rusch Factors, Inc. v. Levin*, 284 F.Supp. 85, 93 (D.R.I.1968)). Accountants have a duty to provide accurate information. Further an accountant may be liable when he initially does not owe a duty but later assumes a duty by providing advise or professional services. *Hall v. Gill*, 108 Ohio App.3d at 205, 670 N.E.2d 503.

■ In the instant case, Plaintiff Travelers's gives evidence that material issues of facts remain regarding Defendant Elmore's alleged negligence. These issues warrant review by a jury. Specifically, the parties dispute Defendant Elmore's knowledge about the $275,000.00 loan. A genuine issue of fact exists as to when Defendant Elmore first learned about KeyBank $275,000.00 loan to Leahey Contracting and when, if at all, he learned that the loan had been repaid.[16] There is also a material issue concerning the extent to which Defendant Elmore verified the loan or disclosed information regarding the loan to Travelers, specifically Mr. Doug Bender.

Because material issues of fact exist as to Defendant Elmore's alleged negligence or misrepresentations, the Court denies his motion for summary judgment on Count II of Plaintiff Travelers's amended complaint. The Court next addresses Plaintiff Travelers's claims for tortious interference with contract or prospective business advantage.

### C. Tortious Interference with Prospective Business Advantage and Contract.

■ In Counts III and IV of its amended complaint, Plaintiff Travelers makes claim against Defendants KeyBank, Donnelly and Bersticker for tortious interference with prospective business advantage and tortious in-

---

**16.** In his August 8, 1997 deposition, Defendant Elmore stated the following:

Q. Okay. Was there something about this loan that made you uneasy?

A. From what I do recall, my employee at the time, Jim Ashworth, informed me that it did not go in, or that it went in and came out.

Q. Did that cause you to ask questions as to what was going on?

A. With David Black, yes.

Q. Okay. Well, was there a discussion as to why it was going in and out?

A. I advised Dave that it was inappropriate, that I would not document that loan in my

financial statements, and it was indicated that as long as Patrick would put the money back in before the next financial statement was due, that Patrick would be fine.

Q. So I understand, this conversation, which took place about this point in time, September of 1996, with Mr. Black led you to conclude that Mr. Black was aware that this $275,000 had been put into the company and taken back out; is that correct?

A. Yes.

Elmore deposition at 46–48.

terference with contract. In making these claims, Travelers argues these defendants interfered with Plaintiff Travelers's business dealings with Leahey Contracting. In this regard, Travelers says the defendants did so by participating in a scheme to falsely inflate Leahey's capitalization to Travelers's long-term disadvantage. Upon review of the record, the Court finds that Plaintiff Travelers fails to give sufficient evidence to make a *prima facie* case for tortious interference of contract or prospective business advantage.

 The tort of inference business or a contractual relationship was first recognized by the Ohio Supreme Court in the case of *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 650 N.E.2d 863 (1995). There, the Supreme Court set forth the standards of proof necessary to make such a claim. A plaintiff must prove five elements: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages. *Id.* at 419, 650 N.E.2d 863 (adopting the provisions of the Restatement of the Law 2d, Torts (1979)). It is clear from the Ohio Supreme Court's decision that the tort is to be used to redress the intentional interference with the performance of a contract by a third person. The court defines those that are subject to liability under the tort, as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Kenty,* 72 Ohio St.3d at 419, 650 N.E.2d 863 (quoting § 766, Restatement of Law 2d, Torts (1979)).

 Tortious interference with contract requires an actor to improperly interfere with the performance of a contract between two other persons. See *Miller v. Wikel Mfg. Co., Inc.,* 46 Ohio St.3d 76, 79, 545 N.E.2d 76 (1989). An essential element of the tort is interference by someone who is not a party

or agent of the party to the contract or relationship at issue. *Erebia v. Chrysler Plastic Products Corp.,* 891 F.2d 1212, 1216 (6th Cir.1989); *Condon v. Body, Vickers & Daniels,* 99 Ohio App.3d 12, 22, 649 N.E.2d 1259 (1994) (law firm office manager was not a "third party subject to liability for tortiously interfering with a contract to which the Firm was a party.").

 Generally, a claim for tortious interference with a business or economic relationship requires proof that "one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby." *Brahim v. Ohio College of Podiatric Medicine,* 99 Ohio App.3d 479, 489, 651 N.E.2d 30 (1994). Such actions must be intentional, because Ohio does not recognize negligent interference with a business relationship. See *Smith v. Ameriflora 1992, Inc.,* 96 Ohio App.3d 179, 186, 644 N.E.2d 1038 (1994); *Burnside v. Leimbach,* 71 Ohio App.3d 399, 404, 594 N.E.2d 60 (1991).

 A person is privileged to interfere in a contract, if the person is legitimately asserting a legally protected interest that the person believes will be impaired by the performance of the contract. *Emergency Preemption, Inc. v. Emergency Preemption Systems, Inc.,* No. 71350, 1997 WL 473093, *5 (Ohio App. 8th Dist. Aug. 14, 1997). Officers, directors, and creditors of a corporation have a privilege to interfere with contracts in furtherance of their legitimate business interests. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). However, corporate officers cannot interfere with a corporation's contract in his capacity as a corporate officer, yet may interfere if his acts were solely in his personal capacity.

In the instant case, Plaintiff Travelers fails to satisfy the third element of this tort—the wrongdoer's intentional procurement of the contract's breach. Although the record shows that material issues of fact remain as to the extent to which the defendants knew about the Traveler–Leahey surety arrange-

ment, Plaintiff Travelers gives no evidence that the defendants here caused a breach of contract or business relationship between Travelers and Leahey Contracting.

Travelers and Leahey Contracting, through their representatives, willing and mutually entered negotiations on a bonding relationship. The defendants were not parties to this relationship or any subsequent contract or agreement resulting from it. However, Travelers's obligation on its bonds resulted from Leahey Contracting's subsequent default on certain construction projects. Leahey's default on these projects triggered Plaintiff Travelers's liability under the surety agreement. There is insufficient evidence to show that Travelers's liability due to Leahey Contracting's default was caused by the alleged interference of any KeyBank defendant.

Similarly, there is no evidence to show that the defendants ever prevented Plaintiff Travelers and Leahey Construction from negotiating or entering into a business relationship. Under Ohio law, it is clear that to be liable for tortious interference with contract or prospective business advantage, a plaintiff must show that a third party improperly caused one of the parties to the contract or business arrangement not to enter or continue the arrangement. *Kenty,* 72 Ohio St.3d at 418–19, 650 N.E.2d 863. Although there is evidence that the surety agreements between Travelers and Leahey Contracting may have been breached, Plaintiff Travelers fails to produce evidence that the KeyBank defendants thwarted any agreement between Travelers and the Leahey defendants.

Because Plaintiff Travelers does not provide evidence of tortious interference under the facts of this case, its related claims for tortious interference with contract or prospective business fail. Accordingly, the Court concludes that Defendant KeyBank is entitled to summary judgment as a matter of law as to Counts III and IV of the amended complaint. Having decided this, the Court turns to Plaintiff Travelers's claims for fraudulent transfer of funds.

### D. Fraudulent Transfer

In Counts V and X of the amended complaint, Plaintiff Travelers asserts claims for fraudulent transfer arising from the following two transactions: (1) KeyBank's August 2, 1996 withdrawal of funds from Leahey Contracting's general account in satisfaction of Patrick Leahey's $275,000.00 personal loan, and (2) Leahey Contracting's June 9, 1997 transfer of $143,348.88 from its general account in exchange for a cashier's check payable to Patrick Leahey. Plaintiff Travelers contends the KeyBank defendants executed these transactions with the intent to hinder, delay and defraud Travelers. The Court finds insufficient evidence to warrant this conclusion as to the $275,000.00, but finds sufficient evidence to warrant trial on the transfer of the $143,348.88 check.

■ To succeed on a claim for fraudulent transfer under Ohio law, a plaintiff must establish the a defendant transferred funds or property "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." Ohio Rev.Code § 1336.04(A)(1). If the party receiving the funds or property "took in good faith and for a reasonably equivalent value," they have a complete defense to a claim for fraudulent transfer. Ohio Rev.Code § 1336.08. In the instant case, Plaintiff Travelers fails to provide evidence that Key-Bank's August 2, 1996 withdrawal of $275,-000.00 from Leahey Contracting's account was in bad faith. Further, as a matter of law, the record shows that the $275,000.00 was exchanged for "reasonably equivalent value."

Specifically, KeyBank's withdrawal of $275,000.00 from Leahey Contracting's account was executed in satisfaction of an antecedent debt and constituted repayment of Patrick Leahey's personal loan from Key-Bank to Leahey Contracting. See Ohio Rev. Code § 1336.03(A). Although the loan was originally secured by Patrick Leahey, the loan proceeds were directly deposited into Leahey Contracting's account with KeyBank and were available for Leahey Contracting's benefit and use. The fact Leahey Contracting allowed the funds to be later withdrawn from its account to repay KeyBank is appropriate, especially since the funds were originally deposited into Leahey Contracting's account by KeyBank. These facts show that

the August 2, 1996, transfer of $275,000.00 from Leahey Contracting to KeyBank was for a reasonably equivalent value.

Turning to the second transaction at issue, the Court finds that genuine issues of fact remain as to whether Leahey Contracting's June 9, 1997 deposit of $143,348.88 into the company's general account, and Key-Bank's subsequent issuance of a cashier's check to Patrick Leahey, was done in good faith and for reasonably equivalent value. The Court decides this because Plaintiff Travelers shows evidence that Leahey Contracting may not have received the benefit of the payment on the Madison Township project.

On June 9, 1997, Ms. Joann Ranallo, Leahey Contracting's controller, deposited a Huntington Trust Company cashier's check for $143,348.88 into the company's general account at KeyBank. Upon deposit of these funds, Defendant Donnelly authorized a Key-Bank branch employee to waive the hold period on the Huntington check and to issue a KeyBank cashier's check to Patrick Leahey. Although the check may have been properly processed at the bank, Plaintiff Travelers gives evidence that issuing a new cashier's check to $143,348.88 payable directly to Patrick Leahey's may have been done to hinder, delay or defraud Travelers.

Because Plaintiff Traveler's fails to give evidence that the August 2, 1996 transaction for $275,000.00 was a fraudulent transfer, KeyBank is entitled to judgment on Count V of the amended complaint. However, because material issues exist as to whether the transfer of $143,348.88 was done in good faith and for a reasonably equivalent value, the Court denies KeyBank's motion for judgment on Count X of the amended complaint.

### V. Conclusion

For the reasons set forth above, the Court denies the KeyBank, Bersticker and Elmore defendants' motions for summary judgment on Count I (fraud, aiding and abetting, and civil conspiracy), Count II (negligence and misrepresentation) and Count X (fraudulent transfer of $143,348.88) of the amended complaint. As the instant motions fail to sufficiently address Plaintiff Travelers's claims under Count VI (exoneration or indemnity), Count VII (breach of contract); Count VIII (breach of fiduciary duty), and Count IX (conversion), the Court preserves these claims for trial. Further, the Court grants the defendants' motions for summary judgment under Count III (tortious interference with prospective business advantage), Count IV (tortious interference with contract), and Count V (fraudulent transfer of $275,000.00) of the amended complaint.

IT IS SO ORDERED.