DECISION. *Page 2 
{¶ 1} In this case, plaintiff-appellant Debra Maupin bought a dry-cleaning business from defendants-appellees Rodney Griffin and Duffran, Inc., (the "Sellers"). When the business flopped, Maupin sued the Sellers for breach of contract and fraud, alleging that the Sellers had sold her a name they did not own.
 {¶ 2} After discovery, the trial court granted summary judgment in the Sellers' favor on all elements of Maupin's claims. Maupin appealed. The judgment was reversed and the cause was remanded to the trial court to determine whether the Sellers had committed fraud by selling the name "Rainbow Cleaners" without having the authority to do so. After a bench trial, the court found that the Sellers had not committed fraud, that the name Rainbow Cleaners was not material to the sale, and that in any event Maupin had failed to prove damages. From that judgment, Maupin appeals.
 {¶ 3} We hold that Maupin's fraud claim failed because she could not prove that the Sellers' alleged misrepresentation was knowing or reckless, and because even if she could, she did not prove any damages.
 I. The Collective Sales of the Business {¶ 4} The Sellers acquired the dry-cleaning business from Bashir Salim and operated the business under the trade name Rainbow Cleaners for a year. The agreement between Salim and the Sellers is not a part of the record. While the Sellers operated the business, Salim never objected to the use of the name Rainbow Cleaners. During that time, the Sellers furnished the business with over $45,000 worth of dry-cleaning equipment. In 2001 Maupin bought the business for $60,000 *Page 3 
and continued operating it as Rainbow Cleaners. The trade name Rainbow Cleaners was not listed as an asset in the sales agreement.
 {¶ 5} A short time later, Maupin alleged, Salim had called her, claiming that he owned the name, and that if she did not stop using the name, he would "bash in her windows." She neither challenged Salim's right to the trade name nor asserted her purported interest. Also, she did not call police about the threatening phone call. When she told the Sellers about the threat, they recommended that she continue using the name. Salim was not made a party to this, or any other, action to adjudicate who was entitled to the trade name. Without conducting additional diligence, due or otherwise, Maupin stopped using the name. The Sellers alleged that Maupin had been contemplating changing the name from the time she acquired the business.
 {¶ 6} We note that a brief search of the Ohio Secretary of State database would probably have revealed to both Maupin and the Sellers whether Salim owned — or at least claimed to own — the name. But the record is silent on whether the parties investigated anything about the name.
 {¶ 7} The record shows that the trade name of the dry-cleaning business was likely confusing to customers. For instance, the only reference to the name was an awning with white letters spelling Rainbow Cleaners. Additionally there was no Rainbow Cleaners logo, and the trade name had not been used on company tickets or paperwork. In fact, the sign on the street read "One Price Cleaners." The record is unclear about whether the street sign was meant to be a trade name or a slogan.
 {¶ 8} Maupin eventually adopted the trade name "The Ritz." The Sellers argue that along with the trade-name change came a transformation in business practices, which included increased prices, cushy seating, increased turnaround time *Page 4 
(from one day to three), and the inclusion of gaudy "fancy accoutrements." Surprisingly or not, the business failed after one year. Maupin sought to be compensated for being sold a trade name that the Sellers did not own.
 {¶ 9} Maupin alleged that because she had to change names, profits dwindled. Though she made no attempt to keep the name Rainbow Cleaners, she attached 2/3 of the value of the $60,000 sale price to the name — thus assigning a value of $20,000 to the remaining business assets (equipment and fixtures). The agreement between the Sellers and Maupin reflected the allocation of assets as follows: $45,000 to equipment, $5,000 to fixtures, and $10,000 to good will. When asked where the $40,000 estimate for the name came from, Maupin testified that the estimate had been the product of a demand letter sent by her previous attorney.
 {¶ 10} We note that a judgment supported by competent, credible evidence going to all the essential elements of the case will not be overturned as being against the manifest weight of the evidence.[1]
 II. Fraud and Damages {¶ 11} In Ohio, fraud requires (1) a representation or, where there is a duty to disclose, an omission of a fact, (2) that is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by that reliance.[2] *Page 5 
 {¶ 12} We hold that the Sellers neither knowingly nor recklessly made a false statement to Maupin. The record fails to demonstrate that either party knew that the name Rainbow Cleaners had not been sold during the first transaction between Salim and the Sellers. And the fact that the Sellers used the name for a year demonstrated the continued belief that the name Rainbow Cleaners had been sold as an asset during the first transaction. The record does not show, nor does Maupin allege, any instance where the Sellers made a knowing or reckless inaccurate statement or representation that the trade name was included as an asset in the second transaction between the parties to this action.
 {¶ 13} As we have noted, the Sellers for a year operated the business under the trade name without opposition. The likely scenario is that neither party had been aware that Salim still held title to the name. That conclusion is most auspiciously illustrated by the closing argument where Maupin conceded that the Sellers (1) "think [they] had the right to own [the name] and [they] think [they] had the right to sell it," and (2) "didn't mean to set out to commit fraud." With that we agree. Again, a simple search of the Ohio Secretary of State website would have placed both parties on notice of Salim's interest in the trade name. But neither made the effort. We hold that the record fails to demonstrate that any knowing or reckless representation or misrepresentation occurred. Certainly the Sellers' lack of due diligence in ascertaining who owned the name was blithe, but under these circumstances it did not reach the level necessary to constitute a reckless act. And even if we assume that the Sellers had made a knowing or reckless representation, Maupin did not prove damages.
 {¶ 14} To recover compensatory damages, the general rule is that injury, and the resulting damages, must be shown with certainty, and not be left to conjecture or *Page 6 
speculation.[3] Maupin's belief that the trade name Rainbow Cleaners was worth $40,000 and that she had been damaged was belied by the facts that she had contemplated changing the name even before being threatened, and that she had made no attempt to assert an interest in the trade name after being threatened. Maupin's speculative assertion that the name was worth $40,000 was insufficient to show what the name was worth or the existence of damages. And there was sufficient testimony to show that the loss in profits was attributable to Maupin's changed business strategy rather than to the name change. Maupin failed to prove the existence of damages with a reasonable degree of certainty.
 {¶ 15} We hold that Maupin failed to establish fraud or damages, and
accordingly the judgment of the trial court is affirmed.
Judgment affirmed. HENDON and CUNNINGHAM, JJ., concur.
[1] See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80 N.E.2d 1273.
[2] See Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167,462 N.E.2d 407.
[3] See, e.g., Swartz v. Steele (1974), 42 Ohio App.2d 1,325 N.E.2d 910; Hall v. Gill (1995), 108 Ohio App.3d 196, 670 N.E.2d 503. *Page 1